1  A.J. Kung
   Nevada Bar No. 7052
2  Brandy Brown
   Nevada Bar No. 9987
3  KUNG & BROWN
4  214 S. Maryland Parkway
   Las Vegas, Nevada 89101
5  (702) 382-0883
   (702) 382-2720 Fax
6  ajkung@ajkunglaw.com
7  bbrown@ajkunglaw.com

8  *[Proposed Reorganization Counsel for
   Dhillon Group, LLC]*

9

10              UNITED STATES BANKRUPTCY COURT

11                   DISTRICT OF NEVADA

12  In re:                          Case No.: 11-53706

13      DHILLON GROUP, LLC          Chapter 11
14      d/b/a HOLIDAY INN EXPRESS.,
                                    **DEBTOR'S MOTION FOR INTERIM
15          Debtor.                 AND FINAL ORDERS PURSUANT TO 11
                                    U.S.C. § 105, 361, 362, 363 AND 364 OF
16                                  THE FEDERAL BANKRUPTCY CODE
                                    (A) AUTHORIZING DEBTOR TO USE
17                                  CASH COLLATERAL (B) GRANTING
                                    ADEQUATE PROTECTION TO
18                                  DEBTOR'S PREPETITION SECURED
                                    CREDITORS AND (C) SCHEDULING A
19                                  FINAL HEARING.**
20                                  Date:    OST PENDING
                                    Time:    OST PENDING
21

22

23      The above-captioned debtor and debtor in possession (collectively, the "Debtor")

24  respectfully submit this Motion (the "Motion") for entry of interim and final orders, pursuant to

25  sections 105, 361, 362, 363, and 364 of title 11 of the United States Code, 11 U.S.C 101, *et seq.*

26

27

28                                  -1-

(the "Bankruptcy Code") (a) authorizing the Debtor to use cash collateral, (b) granting adequate protection to the Debtor's prepetition secured creditors, and (c) scheduling a final hearing on the Motion pursuant to Rule 4001 (b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

As all of the Debtor's cash is Cash Collateral (as defined in the Memorandum of Points and Authorities below), the use of Cash Collateral is required to repair the hotel and to fund day-to-day business operations, including payments to employees, and generally to sustain the Debtor's business operations. Unless the Court authorizes use of the Cash Collateral, the Debtor will be unable to make repairs to the hotel or pay for services and expenses necessary to continue their business operations, pay their employees and maximize the value of the Debtor's estate. Indeed, absent sufficient funds to support the Debtor's business operations, the Debtor's reorganization prospects would be imperiled. Therefore, authorization to use Cash Collateral pending the Final Hearing is in the best interests of the Debtor's estate and creditors.

This Motion is made and based upon these moving papers, the following Memorandum of Points and Authorities, the accompanying The Declaration of Jagmohan Dhillon, the record in these cases, including the pleadings and documents filed on behalf of the parties, the arguments and representations of counsel, and any oral or documentary evidence at or prior to the time of the hearing.

. . .

. . .

. . .

WHEREFORE, the Debtor respectfully requests that the Court enter an order approving the relief set forth above, and granting such other relief as is just and proper.

Dated this 14th day of December 2011.

KUNG AND BROWN

By:___/s/ Brandy Brown_____
A.J. Kung
Nevada Bar No. 7052
Brandy Brown
Nevada Bar No. 9987
214 S. Maryland Parkway
Las Vegas, Nevada 89101
(702) 382-0883
(702) 382-2720 Fax
ajkung@ajkunglaw.com
bbrown@ajkunglaw.com

*[Proposed Reorganization Counsel for Dhillon Group, LLC]*

I.

## MEMORANDUM OF POINTS AND AUTHORITIES

A.    **General Background**

The Debtor, Dhillon Group, LLC, purchased the property located at 2909 Michelle Dr., Sherman Texas, in August of 2007, for use in connection with its Holiday Inn Express Franchise Agreement.    Thereafter, in May of 2008, Debtor refinanced the Property for $6,497,000.00 through United Central Bank.    Pursuant to the terms of the loan, Debtor was to remit $50,371.00 per month for three years with a final balloon payment due on May 20, 2011.    Debtor, though

struggling due to the economic downturn, was able to make its payments to Secured Creditor until March 2011.  Unfortunately, on or about February 4, 2011, the hotel was flooded by its sprinkler system.  The hotel could not be utilized because of the damage.  Therefore, Debtor was unable to remit payment.  The insurance company refused to remit payment for the same. Accordingly, Debtor was unable to repair the Property, rent rooms, and was forced to default under its loan.

The insurance company has now remitted approximately $300,000.00.  United Central Bank is holding these proceeds "hostage" refusing to release the same to Debtor so that it can remit payment for its utilities and make necessary repairs so that it can rent rooms and successfully reorganize.  Instead, Secured Lender is holding the insurance proceeds and initiating foreclosure proceeds.  Accordingly, Debtor respectfully requests that Secured Lender be Ordered to release said sums so that Debtor can make the necessary repairs, open its hotel, and successfully reorganize.

Dhillon Group has a high probability of a successful reorganization as it was a successful hotel prior to the property damage.  Accordingly, Debtor requests that it be permitted to repair its hotel, reopen, and successfully reorganize.

**B.    Bankruptcy Rule 4001 and Concise Statement of Relief**

1.    Relief Requested

The Debtor requests the entry of an interim order and final order authorizing the Debtor to, among other things: (i) use cash collateral to pay for the necessary repairs to the

-4-

property as set forth in the Cost of Repair; (ii) pay those amounts for those expenses set forth in the budget and this Motion, subject to a variance of 20% per line item on an interim basis; and (iii) after payment of the foregoing from cash collateral, authorizing the Debtor to use the excess to fund the costs and expenses of this chapter 11, including the cost and expenses of the Debtor who does not generate revenue or generates insufficient revenue to pay for his costs of operation in full; and (iv) finding that adequate protection is provided through the adequate protection proposal made by the Debtor in Section E below. A copy of the proposed Order for interim use of cash collateral (the "Interim Order") is attached hereto as Exhibit "A". A copy of the Cost of Repair is attached hereto as Exhibit "B". The Budget is attached hereto as Exhibit "C".

2.    <u>Purpose of Use and Use of Cash Collateral</u>

The Debtor proposes to use "cash collateral" as such term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral") to pay for the necessary repairs to the hotel and those expenses as set forth in the Budget on an interim and final basis.

3.    <u>Duration of Use of Cash Collateral</u>

The Debtor proposes to use Cash Collateral first, to and through the date fixed by the Court, for the conduct of the final cash collateral hearing and, in that connection, seek on a final basis to use cash collateral through July 1, 2012 subject to further extension, if appropriate, after a notice and a hearing.

4.      Bankruptcy Rule 4001(b)

Bankruptcy Rule 4001 (b) permits a court to approve a debtor's request for use of cash collateral during the 15-Day period following the filing of a motion requesting authorization to use cash collateral, "only… as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing ." Fed. R. Bankr. P. 4001 (b)(2). In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. *See, e.g., In re Simasko Production Co.,* 47 B.R. 444,449 (D. Co. 1985), 47 B.R. at 449; *see also In re Ames Dep't Stores Inc.,* 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990). After the 15-day period, the request for use of cash collateral is not limited to those amounts necessary to prevent immediate and irreparable harm to the debtors' business. Rather, a debtor is entitled to use cash collateral that it believes prudent in the operation of its business. *See, e.g., Simasko,* 47 B.R. at 449; *Ames Dep't Stores,* 115 B.R. at 36.

The Debtor further respectfully requests that pursuant to Bankruptcy Rule 4001 (b)(2), this Court set a date and time for the Final Hearing to consider the entry of a Final Order approving the relief sought in the Motion.

5.      Adequate Protection to be Provided to Each Entity Claiming an Interest in Cash
        Collateral

The Debtor proposes as and for adequate protection for their use of cash collateral that: (i) the use of cash collateral will first fund the expenses of preserving, maintaining, and operating the real property subject to a claim of cash collateral for the benefit of Cash Collateral Creditors, as defined below; (ii) the use of cash collateral is subject to the

Operating Projections and thus the Cash Collateral Creditors, as defined below, are

provided adequate protection in knowing the purpose and amount of the cash collateral's

use; and (iii) it appears to the Debtor that the value of the secured creditors' interest in

cash collateral will not be diminished by such use, or through the passage of time.  In fact

the secured creditor's interest is best served by rehabilitating the operations of Debtor, as

Debtor's primary asset is worth significantly more as a "going concern" as opposed to a

closed-down hotel.


## C.    The Debtor's Proposed Use of Cash Collateral and Requested Relief

The Debtor requires the immediate use of Cash Collateral to pay for the repairs necessary

to open the hotel and the operating expenses for its business. Absent the use of Cash Collateral,

the Debtor cannot effectuate its reorganization.  The Cost of Repair is attached hereto as Exhibit

"B" and the Budget is attached hereto as Exhibit "C".

Without the use of its Cash Collateral, the Debtor will lose its franchise license, and lose

any going concern value of its business. More specifically, the Debtor respectfully requests that

the Court enter the Interim Order in the form attached hereto as Exhibit "A", authorizing the

Debtor to use Cash Collateral to repair the hotel and operate on an interim basis pending a final

hearing. The salient points of the Order are that the Debtor seeks Court authority to exceed the

total budgeted sums by as much as 20% per line item. This variance is requested to enable the

Debtor to avoid having to rush back into Court if the Debtor's actual expenses exceed the

Debtor's budgeted expenses by a negligible amount.

The reasons underlying the Debtor's need to use Cash Collateral during the course of the Cases are compelling. As all of the Debtor's cash is Cash Collateral (including the insurance proceeds), the use of Cash Collateral is required to repair the hotel and fund day-to-day business operations and legal fees, including payments to employees, and generally to sustain the Debtor's business operations. Unless the Court authorizes use of the Cash Collateral, the Debtor will be unable to pay for services and expenses necessary to continue their business operations, pay their employees, and maintain the value of the Debtor's estate.  Indeed, absent sufficient funds to support the Debtor's business operations, the Debtor's reorganization prospects would be imperiled. Therefore, authorization to use Cash Collateral pending the Final Hearing is in the best interests of the Debtor's estate and creditors.

**D.     The Debtor Should Be Authorized To Use Cash Collateral To Operate, Maintain and Preserve the Property and to Fund Its Costs of Operation**

1.   Overview of Statutory Framework for the Use of Cash Collateral

The Debtor's use of property of the estate is governed by Section 363 of the Bankruptcy Code. *See,* 11 U.S.C. 363 (c)(1), 1107(a) and 1108.

"Cash Collateral" is defined as, "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest." 11 U.S.C. 363 (a). Section 363(c)(2) establishes a special requirement under the Bankruptcy Code with respect to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(1) if:

> (A) each entity that has an interest in such cash collateral consents, or
> (B) the court, after notice and a hearing, authorizes such use, sale or lease in

1  accordance with the provisions of this section.

2  11 U.S.C. 363(c)(2)(A) and (B).

3  One of the provisions of "this section" referenced above, is Section 363(e), which section

4
5  provides in pertinent part:

6  (e) Notwithstanding any other provision of this section, at any time, on request of an

7  entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or

8  leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use,

9  sale or lease as is necessary to provide adequate protection of such interest.

10  11 U.S.C. 363(e).

11
12  The Debtor brings this Motion to obtain the requisite permission to use cash collateral for

13  the operation and repair of its property and business. Further, in contemplation that the Cash

14  Collateral Creditors would demand the provision of adequate protection under section 363(e), the

15  Debtor has provided a comprehensive proposal for the provision of adequate protections that in

16  the Debtors' view provides ample protection against any diminution in the Cash Collateral

17  Creditor's respective interests in their Cash Collateral.

18
19  Adequate protection is described in section 361:

20  When adequate protection is required under sections
   362, 363, or 364 of this title of an interest of an entity in
21  property, such adequate protection may be provided by

22  (1) requiring the trustee to make a cash payment or
   periodic cash payments to such entity, to the extent that the stay
23  under section 362 of this title, use, sale, or lease under section
   363 of this title, or any grant of a lien under section 364 of this
24  title results in a decrease in the value of such entity's interest in
   such property;
25
26
27
28

-9-

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503 (b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. 361.

Section 361 provides three non-exclusive means of providing adequate protection, where the same is required, in that adequate protection may take many forms. 3 *Collier on Bankruptcy*, (15th Ed. 2008), section 361.03, p. 361-9 among other things, the term "indubitable equivalent" has been interpreted liberally. *In re Mocco*, 176 B. R. 355 (Bankr. D.NJ. 1995) citing to *United Savings Association V. Timbers of Inwood Forest Associates*, 484 U.S. 365, 378 (1988), 108 S. Ct. 626, L.Ed. 2d 740. The use of cash collateral involves balancing the interests of the debtor and the secured creditor, and the equities must thus be balanced in each case. *In re Stein*, 19 B.R. 458 (Bankr. E.D. Pa. 1982). It is recognized that "the purpose of Chapter 11 is to rehabilitate debtors and generally, access to cash collateral is necessary to operate business." *In re Dynaco Corporation*, 162 B.R. 389 (Bankr. D. N.H. 1993) quoting *In re Stein, supra*, 19 B.R. at 459. In order to encourage reorganization, a flexible approach should be used in the application of adequate protection. *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 267 (Bankr. C.D. Cal. 1988) (citing to *In re Martin*, 761, F.2d 472 (8th Cir. 1985). The Debtor's use of cash collateral during case administration must be considered in light of the quest for a successful reorganization. *In re O'Conner*, 808 F.2d 1393, 1397 (10th Cir. 1987). Adequate protection is not

-10-

1   intended nor need it stand as an absolute guarantee to the secured creditor that it will receive the

2   value of its interests in the collateral; the cash collateral. *In re McCombs Properties VI, Ltd.,*

3   *Supra; In re Elliott Lease Cars, Inc.,* 20 B.R. 893 (Bankr. D.R.I. 1982)

4       The Debtor submits, as shown below, that the facts and circumstances of these Cases

5   justify the use of Cash Collateral as proposed by the Debtor, and the adequate protection to be

6

7   provided to the Cash Collateral Creditors is more than adequate.

8

9       1.   Use of Cash Collateral for Repairs and Operating Expenses is Permitted

10       It is well settled that the use of cash collateral for the preservation of the value of a

11   secured creditor's lien is in and of itself sufficient to provide adequate protection to a secured

12   creditor for use of those funds. *Federal Natl. Mortgage v. Dacon Bollingsbrook Associates*

13   *Limited Partnership,* 153 B.R. 204; 214 (N.D. I11. 1993); *In re Triplett,* 87 B.R. 25 (Bankr. C.D.

14   Cal. 1981). In *Stein,* the court found that as a general rule, a debtor may use cash collateral where

15

16   such use would enhance or preserve the value of the collateral, and allowed the debtor therein to

17   use cash collateral even though the secured party had no equity cushion for protection. The *Stein*

18   Court determined that the use of cash collateral was necessary to the continued operations of the

19   debtor, and that the creditor's secured position could only be enhanced by the continued

20   operation of the debtor's business. *See also In re McCombs, Supra,* where the court determined

21   that the debtor's use of cash collateral for needed repairs, renovations, and operating expenses

22   eliminated the risk of diminution in the creditor's interest in the cash collateral, and such use

23

24   would more likely increase cash collateral. The ordinary and customary costs of maintenance,

25   operation and preservation of property are expenses that preserve and enhance the value of the

26

27

28

secured creditor's interest in cash collateral. Such expenses are the same expenses a lender or the lender's receiver would have to pay to preserve and protect the property, and thus, there should be no dispute as to the appropriateness of payment of such expenses for their collateral properties by the Cash Collateral Creditor holding liens against the property. *See, In re Princeton Square Associates, L.P.,* 201 B.R. 90, 96 (Bankr. S.D.N.Y. 1996). The Debtor's use of Cash Collateral will preserve and increase the value of the property, not diminish the value.

The Debtor respectfully submits that they have satisfied the standards applicable for the use of Cash Collateral. As described above, it is vital to the success of the Debtor's reorganization efforts that they immediately obtain access to Cash Collateral. The preservation of the Debtor's business and ability to reorganize successfully, depend heavily upon the expeditious approval of the use of Cash Collateral. Absent this Court's approval of the interim relief sought herein, the Debtor's face a substantial risk of severe disruption to their business operations, irreparable damage to their relationships with their vendors and customers, and the inability to maintain the value of their assets.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

1    WHEREFORE, the Debtor respectfully requests entry of the Interim Order, and granting

2  such other and further relief as is just and proper under the circumstances.

3

4

5    Dated this 14th day of December 2011.

6                                           KUNG AND BROWN

7                                           By:____/s/ Brandy Brown_____

8                                               A.J. Kung
                                                Nevada Bar No. 7052
9                                               Brandy Brown
                                                Nevada Bar No. 9987
10                                              214 S. Maryland Parkway
                                                Las Vegas, Nevada 89101
11                                              (702) 382-0883
12                                              (702) 382-2720 Fax
                                                ajkung@ajkunglaw.com
13                                              bbrown@ajkunglaw.com

14                                              *[Proposed Reorganization Counsel for*
15                                              *Dhillon Group, LLC]*

16

17

18

19

20

21

22

23

24

25

26

27
                                        -13-
28

# EXHIBIT "A"

1  AJ KUNG, ESQ.
   Nevada Bar No. 7052
2  BRANDY BROWN, ESQ.
   Nevada Bar No. 9987
3  KUNG & BROWN
   214 South Maryland Parkway
4  Las Vegas, Nevada  89101
   Telephone:  (702) 382-0883
5  Facsimile:  (702) 387-2720
6  Email: ajkung@ajkunglaw.com
        bbrown@ajkunglaw.com
7  *[Proposed] Attorneys for Debtor*

8              UNITED STATES BANKRUPTCY COURT

9                    DISTRICT OF NEVADA

10 In re:                                Case No.: 11-53706

11
   DHILLON GROUP LLC                     Chapter 11
12 d/b/a HOLIDAY INN EXPRESS
                                         **ORDER AUTHORIZING THE**
13              Debtor.                   **DEBTOR'S USE OF CASH**
                                         **COLLATERAL ON AN INTERIM**
14                                       **BASIS.**

15

16

17         Upon the motion of the debtor and debtor in possession in the above-captioned cases (the

18 "Debtor"), for entry of interim and final orders, pursuant to sections 105, 361, 362, 363 and 364 of

19 title 11 of the United States Code, 11 U.S.C. 101, *et seq.,* (a) authorizing the Debtor to use cash

20 collateral, (b) granting adequate protection to the Debtor's preparation secured creditors, and (c)

21 scheduling a final hearing on the Motion pursuant to Rule 4001 (b) of the Federal Rules of

22 Bankruptcy Procedure; upon the *Declaration of Jagmohan Dhillon;* upon the other pleadings and

23 documents filed in these cases; and upon the arguments made by counsel at the hearing, and the

24 Court having jurisdiction to consider the Motion and the relief requested therein in accordance with

25 28 U.S.C. 1334; and it appearing that the relief requested by the Motion is necessary and in the best

26 interests of the Debtor, its estate, and its creditors; and due notice of the Motion having been served

27 upon (a) the Office of the United States Trustee, (b) the secured creditors holding consensual liens

28

                                        1

on the property of the Debtor, and (c) the consolidated 25 largest unsecured creditors of the Debtor

(the "25 Largest Unsecured Creditors") having been noticed, and it appearing that no other or

further notice need be given ; and sufficient cause appearing therefore, it is

## ORDERED

1.    The Motion is GRANTED on an interim basis pending a final hearing, which final

hearing shall be held on _____, 2011 at __ : ___..m, before this Court (the "Final Hearing").

2.    The Debtor is hereby authorized to use the Cash Collateral to and through the date

set for the Final Hearing on the Motion, pursuant to the terms of the Motion and in the amounts and

for the expenses set forth in the Cost of Repair and Budget attached to the Motion as Exhibit "B"

and "C" respectively.  In that connection, it is further ordered that the Debtor shall not deviate by

more than 20% on any line item in the Budge or Cost of Repair.

3.    After the payment of the expenses of preserving, maintaining and operating the Cash

Collateral Properties, any excess income may be utilized by any other Debtor to pay its ordinary

costs and expenses of preserving, maintaining and operating its property. Further, such excess

income or receipts from any Cash Collateral Property shall be available to the Debtor to pay the fees

and costs of the professionals of the Debtor's estates, as such fees and costs may be awarded by the

Court after appropriate notice and a hearing.

4.    Any opposition to the Motion must be filed with the Court and served on the United

States Trustee, the Cash Collateral Creditors, parties requesting special notice, counsel for any

official unsecured creditors committee appointed in these cases, or until such time as counsel is

named, the 25 Largest Unsecured Creditors, or upon any such Committee of Creditors Holding

Unsecured Claims, if one is appointed, and counsel to the Debtor, by no later than ___:00 __.m. on

_____, 2011.

5.    Any reply to opposition to the Motion must be filed with the Court, with a

2

conformed copy delivered to chambers and a copy served on the United States Trustee, the Cash Collateral Creditors, counsel for any official unsecured creditors committee appointed in this case, or until such time as counsel is named, the 25 Largest Unsecured Creditors, and parties requesting special notice, by no later than _:00 p.m. on _____, 2011.

6.    Upon entry of this Order, counsel for the Debtor shall forward written notice thereof to the creditors and interested parties described in paragraph 5 above.

7.    The Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implantation of this Order.

Respectfully Submitted:


KUNG AND BROWN


_____/s/ Brandy Brown_____
A.J. Kung
Nevada Bar No. 7052
Brandy Brown
Nevada Bar No. 9987
214 S. Maryland Parkway
Las Vegas, Nevada 89101
(702) 382-0883
(702) 382-2720 Fax
ajkung@ajkunglaw.com
bbrown@ajkunglaw.com
*[Proposed Reorganization Counsel for Dhillon Group, LLC]*

# EXHIBIT "B"



## Pate Development Company, Inc.

**2100 Estes Park Dr.**
**Southlake, TX 76092**

| Estimate | |
|---|---|
| Date | Estimate # |
| 12/8/2011 | 2011056 |

**Name / Address**

Holiday Inn Express
DMC Hotels, LLC
Jag Dhillon
3400 PARKWOOD BLVD
FRISCO, TX 75034

**Ship To**

HOLIDAY INN EXPRESS
Dhillon Management
2909 MICHELLE DR
SHERMAN, TX 75092

| Item | Description | Qty | Rate | Total |
|---|---|---|---|---|
| 01.2 Building Permits | Building Permits | 1 | 0.00 | 0.00 |
| 02 Site Work | Site Work - Clean up & Restoration | 1 | 7,865.00 | 7,865.00 |
| 16 Electrical & Lighting | Electrical & Lighting - Install Fixtures | 154 | 119.00 | 18,326.00 |
| 14 Plumbing | Plumbing Repairs | 84 | 65.00 | 5,460.00 |
| 15 HVAC | Heating & Cooling | 89 | 112.00 | 9,968.00 |
| 19 Ceilings & Cover | Ceilings & Coverings - Install new Drop Ceilings in Hallways | 4,320 | 8.00 | 34,560.00 |
| 18 Interior Walls | Interior Walls - Drywall Finishing Hallways | 14,480 | 3.00 | 43,440.00 |
| 34 Paint | Paint Labor & Material 84 Rooms | 63,840 | 1.68 | 107,251.20 |
| Guest Room Carpet | Carpet - Guest Rooms & Public Area | 5,170 | 15.95 | 82,461.50 |
| Carpet Pad | Carpet Pad 36 oz for Lobby & Hallways | 5,170 | 2.59 | 13,390.30 |
| Carpet Installation | Carpet Installation | 5,170 | 6.45 | 33,346.50 |
| Carpet Cove Base - Material | Carpet Cove Base | 9,056 | 2.19 | 19,832.64 |
| 35 Demolition | Demolition - Removal & Cleanup of Old Carpet & Padding | 1 | 8,670.00 | 8,670.00 |
| 41 Wall Coverings | Wall Vinyl - Labor & Material | 886 | 9.56 | 8,470.16 |
| 52 Property Management Syst... | IHG Property Mgmt. System Upgrade | 1 | 32,460.00 | 32,460.00 |
| 53 Fire Sprinkler System | Repairs and Restoration | 1 | 36,845.00 | 36,845.00 |
| 54 Hotel Startup Supplies | Holiday Inn Express - Guest Supplies | 1 | 54,845.00 | 54,845.00 |
| 25 Cleanup | Cleanup & Restoration | 1 | 16,800.00 | 16,800.00 |
| 49 Overheads | Job Overheads (5%) | 1 | 27,000.00 | 27,000.00 |
| 50 Profits | Profit (7.5%) | 1 | 34,500.00 | 34,500.00 |

*Thanks for Doing Business with Us.*

| **Total** | **$595,491.30** |
|---|---|

| Phone # | 417-434-5555 | Fax # | 866-677-5572 | | rogerpate@patedevelopmentcompany.com |
|---|---|---|---|---|---|

EXHIBIT "C"

## Dhillon Group , LLC dba Holiday Inn Express
### Profit & Loss

| | Jan 2012 | Feb 2012 | Mar 2012 | Apr 2012 | May 2012 | June 2012 | July 2012 | Aug 2012 | Sep 2012 | Oct 2012 | Nov 2012 | Dec 2012 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | |
| Meeting Rooms Revenue | | | | | 200.00 | 300.00 | 375.00 | 250.00 | 200.00 | 575.00 | 775.00 | 350.00 | 3,025.00 |
| Other Room Revenue | | | | | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 1,600.00 |
| Rooms Revenue | | | | | 162,300.00 | 173,400.00 | 161,950.00 | 175,200.00 | 161,700.00 | 157,800.00 | 144,800.00 | 123,400.00 | 1,260,550.00 |
| **Total Gross Income** | 0.00 | 0.00 | 0.00 | 0.00 | 162,700.00 | 173,900.00 | 162,525.00 | 175,650.00 | 162,100.00 | 158,575.00 | 145,775.00 | 123,950.00 | 1,265,175.00 |
| | | | | | | | | | | | | | |
| **Gross Profit** | 0.00 | 0.00 | 0.00 | 0.00 | 162,700.00 | 173,900.00 | 162,525.00 | 175,650.00 | 162,100.00 | 158,575.00 | 145,775.00 | 123,950.00 | 1,265,175.00 |
| | | | | | | | | | | | | | |
| **Expense** | | | | | | | | | | | | | |
| **Admin & General** | | | | | | | | | | | | | |
| Bank Charges | 100.00 | 100.00 | 100.00 | 100.00 | 130.16 | 139.12 | 130.02 | 140.52 | 129.68 | 126.86 | 116.62 | 99.16 | 1,412.14 |
| Credit Card Merchant Fees | 100.00 | 100.00 | 100.00 | 100.00 | 2,277.80 | 2,434.60 | 2,275.35 | 2,459.10 | 2,266.40 | 2,220.05 | 2,040.85 | 1,735.30 | 18,112.45 |
| Dues and Subscriptions | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600.00 |
| Employee Benefits | | | | | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 800.00 |
| Employee Training | | | | 5,000.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 7,400.00 |
| Insurance | 3,400.00 | 3,400.00 | 3,400.00 | 3,400.00 | 3,400.00 | 3,400.00 | 3,400.00 | 3,400.00 | 3,400.00 | 3,400.00 | 3,400.00 | 3,400.00 | 40,800.00 |
| License and Tax | 500.00 | 500.00 | 500.00 | 500.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 3,200.00 |
| Meals & Entertainment | | | | | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 800.00 |
| Office Supplies | | | | | 162.70 | 173.90 | 162.53 | 175.65 | 162.10 | 158.58 | 145.78 | 123.95 | 1,265.18 |
| Operating Services | | | | | 1,464.33 | 1,565.10 | 1,462.73 | 1,580.85 | 1,458.90 | 1,427.18 | 1,311.98 | 1,115.55 | 11,286.58 |
| Penalty | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 |
| Postage & Freight | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 |
| Security | | | | 140.00 | 140.00 | 140.00 | 140.00 | 140.00 | 140.00 | 140.00 | 140.00 | 140.00 | 1,280.00 |
| Theft & Loss | 200.00 | 200.00 | 200.00 | 200.00 | 32.54 | 34.78 | 32.51 | 35.13 | 32.42 | 31.72 | 29.16 | 24.79 | 1,053.04 |
| Travel Expense | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 130.16 | 138.12 | 130.12 | 140.52 | 129.68 | 126.86 | 116.62 | 99.16 | 7,012.14 |
| Vehicle Expense | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600.00 |
| **Total Admin & General** | 6,600.00 | 6,600.00 | 6,600.00 | 11,740.00 | 9,187.68 | 9,476.62 | 9,183.15 | 9,521.77 | 9,172.16 | 9,081.24 | 8,751.00 | 8,187.91 | 104,101.52 |
| | | | | | | | | | | | | | |
| **COST OF LABOR** | | | | | | | | | | | | | |
| Payroll Taxes | | | | 500.00 | 1,840.14 | 1,966.81 | 1,838.16 | 1,886.60 | 1,833.35 | 1,793.46 | 1,548.72 | 1,401.87 | 14,809.13 |
| Salaries and Wages | | | | 5,000.00 | 21,151.00 | 22,607.00 | 21,128.25 | 22,834.50 | 21,073.00 | 20,614.75 | 18,950.75 | 16,113.50 | 169,472.75 |
| **Total COST OF LABOR** | 0.00 | 0.00 | 0.00 | 5,500.00 | 22,991.14 | 24,573.81 | 22,966.41 | 24,821.10 | 22,906.35 | 22,408.23 | 20,599.47 | 17,515.37 | 184,281.88 |
| | | | | | | | | | | | | | |
| **Food & Beverage** | | | | | | | | | | | | | |
| Comp/Discount Meals | | | | 4,000.00 | 4,881.00 | 5,217.00 | 4,875.75 | 5,269.50 | 4,863.00 | 4,757.25 | 4,373.25 | 3,718.50 | 41,955.25 |
| Restuarnt Operating Supplies | | | | 2,000.00 | 2,928.80 | 3,130.20 | 2,925.45 | 3,161.70 | 2,917.80 | 2,854.35 | 2,623.95 | 2,231.10 | 24,773.15 |
| **Total Food & Beverage** | 0.00 | 0.00 | 0.00 | 6,000.00 | 7,809.80 | 8,347.20 | 7,801.20 | 8,431.20 | 7,780.80 | 7,611.60 | 6,997.20 | 5,949.60 | 66,728.40 |
| | | | | | | | | | | | | | |
| **Repairs & Maintenances** | | | | | | | | | | | | | |
| Building & Flooring | | | | | 878.58 | 939.06 | 877.64 | 948.51 | 875.34 | 856.31 | 787.19 | 669.33 | 6,831.95 |
| Electrical & Mechanical | | | | | 813.50 | 869.50 | 812.63 | 878.25 | 810.50 | 792.88 | 728.88 | 619.75 | 6,328.88 |
| Elevators | | | | | | | | | | | | | 0.00 |
| Ground Maintenance | | | | 500.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 2,900.00 |
| Pest Control | | | | | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 1,200.00 |
| Plumbing and Heating | | | | | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 8,000.00 |
| Swimming Pool | | | | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 5,400.00 |
| **Total Repairs & Maintenance** | 0.00 | 0.00 | 0.00 | 1,100.00 | 3,742.08 | 3,858.55 | 3,740.26 | 3,876.76 | 3,735.84 | 3,699.18 | 3,566.06 | 3,339.08 | 30,657.82 |
| | | | | | | | | | | | | | |
| **Rooms Department** | | | | | | | | | | | | | |
| Bad Debt | | | | | 162.70 | 173.90 | 162.53 | 175.65 | 162.10 | 158.58 | 145.78 | 123.95 | 1,265.18 |
| Banquet Equipment Rental | | | | | 81.35 | 86.95 | 81.26 | 87.83 | 81.05 | 79.29 | 72.89 | 61.98 | 632.59 |
| Cleaning Supplies | | | | | 813.50 | 869.50 | 812.63 | 878.25 | 810.50 | 792.88 | 728.88 | 619.75 | 6,326.88 |

## Dhillon Group , LLC dba Holiday Inn Express
### Profit & Loss

| | Jan 2012 | Feb 2012 | Mar 2012 | Apr 2012 | May 2012 | June 2012 | July 2012 | Aug 2012 | Sep 2012 | Oct 2012 | Nov 2012 | Dec 2012 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Guest Relocation | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Operating Supplies | 0.00 | 0.00 | 0.00 | 3,000.00 | 1,464.30 | 1,565.10 | 1,462.73 | 1,580.85 | 1,456.90 | 1,427.18 | 1,311.88 | 1,115.55 | 14,386.56 |
| Linen | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1.00 | 3.00 | 4.00 | 5.00 | 6.00 | 7.00 | 28.00 |
| **Total Rooms Department** | 0.00 | 0.00 | 0.00 | 3,350.00 | 3,034.55 | 3,220.35 | 3,033.86 | 3,251.23 | 3,028.65 | 2,971.49 | 2,761.29 | 2,402.18 | 27,053.39 |
| **Sales & Marketing** | | | | | | | | | | | | | |
| Advertisement & Promotions | | | | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 9,000.00 |
| Dues & Subscriptions | | | | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 2,700.00 |
| Franchise Fees | 2,280.00 | 2,280.00 | 2,280.00 | 2,280.00 | 20,337.50 | 21,737.50 | 20,316.63 | 21,956.25 | 20,282.50 | 19,321.88 | 18,221.88 | 15,493.75 | 167,266.88 |
| Travel Agent Commission | | | | 0.00 | 162.70 | 173.90 | 162.53 | 175.65 | 162.10 | 158.58 | 145.78 | 123.95 | 1,265.18 |
| **Total Sales & Marketing** | 2,280.00 | 2,280.00 | 2,280.00 | 3,580.00 | 21,800.20 | 23,211.40 | 21,778.15 | 23,431.90 | 21,724.60 | 21,280.45 | 19,667.65 | 16,917.70 | 180,232.06 |
| **Utilities** | | | | | | | | | | | | | |
| Cable | 0.00 | 0.00 | 0.00 | 0.00 | 2,440.50 | 2,608.50 | 2,437.88 | 2,634.75 | 2,431.50 | 2,378.63 | 2,186.03 | 1,859.25 | 18,977.63 |
| Electricity | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,742.10 | 3,999.70 | 3,738.08 | 4,039.95 | 3,728.30 | 3,647.23 | 3,352.83 | 2,850.85 | 41,099.03 |
| Gas | 0.00 | 0.00 | 0.00 | 0.00 | 1,513.11 | 1,617.27 | 1,511.48 | 1,633.55 | 1,507.53 | 1,474.75 | 1,355.71 | 1,152.74 | 11,766.13 |
| Telephone & Internet | 0.00 | 0.00 | 0.00 | 0.00 | 1,627.00 | 1,739.00 | 1,625.25 | 1,756.50 | 1,621.00 | 1,565.75 | 1,457.75 | 1,239.50 | 12,651.75 |
| Waste Removal | 0.00 | 0.00 | 0.00 | 0.00 | 80.00 | 81.00 | 82.00 | 83.00 | 84.00 | 85.00 | 86.00 | 87.00 | 668.00 |
| Water | 800.00 | 800.00 | 800.00 | 0.00 | 1,627.00 | 1,739.00 | 1,625.25 | 1,756.50 | 1,621.00 | 1,585.75 | 1,457.75 | 1,238.50 | 15,051.75 |
| **Total Utilities** | 3,800.00 | 3,800.00 | 3,600.00 | 3,000.00 | 11,029.71 | 11,784.47 | 11,019.93 | 11,904.25 | 10,993.33 | 10,757.10 | 9,896.69 | 8,428.84 | 100,214.28 |
| **Total Expense** | 12,680.00 | 12,680.00 | 12,680.00 | 34,270.00 | 79,594.94 | 84,472.41 | 79,522.76 | 85,238.20 | 79,341.75 | 77,809.28 | 72,239.32 | 62,740.67 | 693,269.33 |
| **Net Ordinary Income** | (12,680.00) | (12,680.00) | (12,680.00) | (34,270.00) | 83,185.06 | 89,427.59 | 83,002.24 | 90,411.80 | 82,768.25 | 80,765.72 | 73,535.58 | 61,209.33 | 571,905.67 |
| **Other Income/Expense** | | | | | | | | | | | | | |
| Loss-of-Income Insurance | 160,000.00 | 160,000.00 | 160,000.00 | 160,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 640,000.00 |
| **Total Other Income** | 160,000.00 | 160,000.00 | 160,000.00 | 160,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 640,000.00 |
| **Other Expense** | | | | | | | | | | | | | |
| Casualty Losses Repair Cost | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | | | | | | | | | 540,000.00 |
| Management Fee | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,994.50 | 6,086.50 | 5,988.38 | 6,147.75 | 5,673.50 | 5,550.13 | 5,102.13 | 4,338.25 | 66,681.13 |
| Interest Expense | 0.00 | 0.00 | 0.00 | 0.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 | 320,000.00 |
| Occupancy Taxes | 0.00 | 0.00 | 0.00 | 0.00 | 19,931.58 | 21,284.74 | 19,888.60 | 21,515.79 | 19,857.89 | 19,378.95 | 17,782.46 | 15,154.39 | 154,804.39 |
| Property Taxes | 11,600.00 | 11,600.00 | 11,600.00 | 11,600.00 | 11,600.00 | 11,600.00 | 11,600.00 | 11,600.00 | 11,600.00 | 11,600.00 | 11,600.00 | 11,600.00 | 139,200.00 |
| **Total Other Expense** | 152,200.00 | 152,200.00 | 152,200.00 | 152,200.00 | 77,226.08 | 78,981.24 | 77,176.97 | 79,263.54 | 77,131.39 | 76,529.07 | 74,484.58 | 71,092.64 | 1,220,685.51 |
| **Net Income** | (4,880.00) | (4,880.00) | (4,880.00) | (26,470.00) | 5,878.98 | 10,446.35 | 5,825.27 | 11,148.26 | 5,626.85 | 4,236.64 | (948.90) | (9,883.31) | (8,779.84) |