# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **DHILLON GROUP, LLC,** | § | |
| | § | **CASE NO. 12-40163** |
| | § | **Chapter 11** |
| | § | |
| **DEBTOR.** | § | |

## FIRST DISCLOSURE STATEMENT
## <u>DATED MARCH 16, 2012</u>

**Joyce Lindauer**
**Arthur Ungerman**
**Attorneys at Law**
**8140 Walnut Hill Lane**
**Suite 301**
**Dallas, Texas  75231**
**972/503-4033 (Joyce)**

**COUNSEL FOR DEBTOR AND**
**DEBTOR-IN-POSSESSION**

## TABLE OF CONTENTS

ARTICLE I - INTRODUCTION ........................................................................... 3

ARTICLE II - REPRESENTATIONS ....................................................... 9

ARTICLE III - FINANCIAL PICTURE OF THE DEBTOR..................................... 11

ARTICLE IV - ANALYSIS AND VALUATION OF PROPERTY ........................... 12

ARTICLE V - SUMMARY OF THE PLAN ............................................... 13

ARTICLE VI – MEANS FOR IMPLEMENTATION OF PLAN............................. 19

ARTICLE VII – TREATMENT OF EXECUTORY CONTRACTS AND

UNEXPIRED LEASES.................................................................... 19

ARTICLE VIII - FEASIBILITY OF PLAN ........................................... 20

ARTICLE IX - ALTERNATIVES TO DEBTOR'S PLAN ....................................... 20

ARTICLE X - RISKS TO CREDITORS UNDER DEBTOR'S PLAN ..................... 20

ARTICLE XI - TAX CONSEQUENCES TO THE DEBTOR.................................. 21

ARTICLE XII - PENDING LITIGATION................................................. 24

ARTICLE XIII - SUMMARY OF SIGNIFICANT

ORDERS ENTERED DURING THE CASE ........................................... 25

EXHIBITS ............................................................................................

    Plan ................................................................................... 1

    Operating Statements ........................................................ 2

    Projections .......................................................................... 3

# ARTICLE I

### Identity of the Debtor

**1.01**     Debtor filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. Section 101, et seq. ("**Code**") on December 5, 2011 in the United States Bankruptcy Court in Las Vegas, Nevada and the case was transferred to the Eastern District of Texas, Sherman Division ("**Court**") [Docket No. 1], initiating the above-styled and referenced bankruptcy proceeding. The **Debtor** is operating its business as a **Debtor-in-Possession** pursuant to Sections 1107 and 1108 of the **Code**.

### Purpose of This Disclosure; Sources of Information

**1.02**.    **Debtor** submits this Disclosure pursuant to Section 1125 of the **Code** to all known **Claimants** of **Debtor** for the purpose of disclosing that information which the **Court** has determined is material, important, and necessary for **Creditors** of, and the Members of, **Debtor** in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the **Debtor's Plan**.  A copy of the Plan is attached hereto as ***Exhibit "1"*** and incorporated herein by this reference. The Plan sets forth in detail the repayment arrangement between the Debtor and its creditors. This Disclosure describes the operations of the **Debtor** contemplated under the **Plan**. Any accounting information contained in the case has been done on an accrual basis and herein has been provided by the **Debtor** and has been prepared using the cash method of accounting.

### Explanation of Chapter 11

**1.03**     Chapter 11 is the principal reorganization chapter of the **Code**.   Pursuant to Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders.   Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case.   A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor.   After a plan of reorganization has been filed, it must be accepted by holders of claims against, or interests in, the debtor.   Section 1125 of the **Code** requires full disclosure before solicitation of acceptances of a plan of reorganization.   This Disclosure is presented to **Claimants** to satisfy the requirements of Section 1125 of the **Code**.

### Explanation of the Process of Confirmation

**1.04**     Even if all **Classes** of **Claims** accept the plan, its confirmation may be refused by the **Court**.   Section 1129 of the **Code** sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of **Claimants**.   It generally requires that the value to be distributed to **Claimants** and **Equity Interest Holders** may not be less than such parties would receive if the debtor were liquidated under Chapter 7 of the **Code**.

**1.05**     Acceptance of the plan by the **Creditors** and **Equity Interest Holders** is important.  In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan.  Chapter 11 of the **Code** does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the **Court**.  The plan, however, must be accepted by:  (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

**1.06**     The **Court** may confirm the plan even though less than all of the classes of claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the **Code**.

**1.07**     **Confirmation** of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the **Code**.  **Confirmation** makes the plan binding upon the debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

### Voting Procedures

**1.08**     **Unimpaired Class**.  **Claimants** in Class 1 are not impaired under the **Plan**.  Such Class, therefore, is deemed to have accepted the **Plan**.

**1.09**     **Impaired Classes**.  The Classes 2, 3, 4, 5, 6, 7, 8, 9 and 10 **Claimants** are impaired as defined by Section 1124 of the **Code**.  The **Debtor** is seeking the acceptance of the **Plan** by **Claimants** in **Classes**  2, 3, 4, 5, 6, 7, 8, 9 and 10.  Each holder of an **Allowed Claim** in **Classes**  2, 3, 4, 5, 6, 7, 8, 9 and 10 may vote on the **Plan** by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.  The Class 10 Equity Holders are also impaired but as insiders their votes do not count towards Confirmation. One ballot will be sent to each **Claimant** eligible to vote on the **Plan**.  For all **Classes**, the ballot must be returned to **Debtor**'s attorney, Joyce Lindauer, Attorney at Law, 8140 Walnut Hill Lane, Suite 301, Dallas, TX 75231.  In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

**1.10**     **Acceptances**.  Ballots that are signed and returned but fail to indicate either an acceptance or rejection will not be counted.

### Best Interests of Creditors Test

**1.11**     Section 1129(a)(7) of the **Code** requires that each impaired class of claims or interests accept the **Plan** or receive or retain under the **Plan** on account of such claim or interest, property of a value as of the **Effective Date** of the **Plan**, that is not less than the amount that such holder would so receive or retain if the **Debtor** were liquidated under Chapter 7 of the Bankruptcy **Code**.  If Section 1111(b)(2) of the **Code** applies to the claims of such class, each holder of a claim of such class will receive or retain under the **Plan**, on account of such claim, property of a value, as of the **Effective Date** of the **Plan**, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.  In order for the **Plan** to be confirmed, the **Court** must determine that the **Plan** is in the best interest of the **Debtor**'s creditors.  Accordingly, the proposed plan must provide the **Debtor**'s creditors with more than they would receive in a Chapter 7 liquidation. Accordingly, since the **Plan** proposes to pay all secured creditors and the unsecured creditors a dividend, Debtor believes that the creditors are receiving more than they would receive in a Chapter 7 liquidation. Without the continued operation of the Debtor's business there would be no funds to pay unsecured creditors. A liquidation analysis is provided in Section 13. Accordingly, the Debtor contends that the **Plan** satisfies the requirements of Section 1129(a)(7).

### Cramdown

**1.12**     The **Court** may confirm the **Plan** even though less than all of the classes of claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the **Code**.  Accordingly, **Debtor**, as the plan proponent, requests the **Court** to determine that the **Plan** does not discriminate unfairly, and is fair and equitable with respect to any objecting creditor. A discussion of the specific requirements for Cramdown of a Plan are set forth starting  below.

### Definition of Impairment

**1.13**     As set forth in section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a plan of reorganization unless, with respect to each claim or equity interest of such class, the plan: leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or equity interest; or notwithstanding any contractual provision or applicable law that entitles the holder of a claim or equity interest to demand or receive accelerated payment of such claim or equity interest after the occurrence of a default: cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; reinstates the maturity of such claim or interest as it existed before such default; compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

### Classification and Treatment of Claims and Interests

**1.14**    The Plan classifies Claims separately in accordance with the Bankruptcy Code and provides different treatment for different classes of Claims.

**1.15**    Only holders of Allowed Claims are entitled to receive distributions under the Plan. Allowed Claims are Claims that are not in dispute, are not contingent, are liquidated in amount, and are not subject to objection or estimation.  Initial distributions or other transfers of Cash or other consideration specified in the Plan otherwise available to the holders of Allowed Claims will be made on the Effective Date, or (b) the date on which such Claim becomes an Allowed Claim), as otherwise provided in the Plan, or as may be ordered by the Bankruptcy Court.

**1.16**    In accordance with the Plan, unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim under the Plan will be in full satisfaction, settlement, release, and discharge of and in exchange for each and every Claim.

**<u>Requirements for Confirmation of the Plan</u>**

**1.17**    At the confirmation hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  As set forth in section 1129 of the Bankruptcy Code, these requirements are as follows:

> The plan complies with the applicable provisions of the Bankruptcy Code.
> The proponents of the plan comply with the applicable provisions of the Bankruptcy Code.
> The plan has been proposed in good faith and not by any means forbidden by law.
> Any payment made or promised by the Debtor, by the plan proponents, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable.

(A)    The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the plan; and

(B)    the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

> the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider.
> Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the Debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

With respect to each impaired class of claims or interests:

> (i) each holder of a claim or interest of such class has (A) accepted the plan or (B) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code on such date; or (ii) if section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

With respect to each class of claims or interests:

> (i)     such class has accepted the plan; or
>
> (ii)    such class is not impaired under the plan.

Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that:

> (i)     with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of the Bankruptcy Code, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;
>
> (ii)    with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code, each holder of a claim of such class will receive: (I) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and
>
> (iii)   with respect to a claim of a kind specified in section 507(a)(7) of the Bankruptcy Code, the holder of a claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

If a class of claims is impaired under the plan, at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the

plan, unless such liquidation or reorganization is proposed in the plan.

All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payments of all such fees on the effective date of the plan.

The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114, at any time prior to confirmation of the plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

The Debtor believes that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code, that the Debtor has complied with or will have complied with all the requirements of chapter 11, and that the Plan is proposed in good faith.

At the Confirmation Hearing, the Bankruptcy Court will determine whether holders of Allowed Claims or Allowed Equity Interests would receive greater distributions under the Plan than they would receive in a liquidation under chapter 7.

The Debtor believes that the feasibility requirement for confirmation of the Plan is satisfied by the fact that the future operating revenues will be sufficient to satisfy the obligations under the Plan in addition to supporting sustainable growth of the enterprise.  These facts and others demonstrating the confirmability of the Plan will be shown at the Confirmation Hearing.

### Cramdown

**1.18**    The bankruptcy court may confirm a plan of reorganization even though fewer than all the classes of impaired claims and interests accept it.  For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or interests, the proponents of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or interests that has not accepted the plan.

**1.19**    "Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims.  As set forth in section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

With respect to a class of **secured claims**, the plan provides:

(a)(i) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(ii)  that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(b)  for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

(c)  the realization by such holders of the "indubitable equivalent" of such claims.

With respect to a class of **unsecured claims**, the plan provides:

(a)  that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(b)  the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

With respect to a class of **interests**, the plan provides:

(a)  that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

(b)  that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

**1.20**    In the event that one or more classes of impaired Claims reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims. SO LONG AS THE CLASSES OF UNSECURED CREDITORS VOTE FOR THE PLAN THEN THE PLAN WILL NOT VIOLATE THE ABSOLUTE PRIORITY RULE. The absolute priority rule requires that prior to the Debtor retaining or receiving any property the senior classes of claims must be paid in full or vote to accept the Plan. The Debtor has built an auction process of the Equity into the Plan to address the absolute priority rule issue in this case should the unsecured creditors not accept the Plan.

The Debtor believes the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each impaired class of Claims.

## ARTICLE II.
## <u>REPRESENTATIONS</u>

2.01    This Disclosure is provided pursuant to Section 1125 of the **Code** to all of the **Debtor**'s known **Creditors** and other parties in interest in connection with the solicitation of acceptance of its **Plan** of reorganization, as amended or modified.  The purpose of this Disclosure is to provide such information as will enable a hypothetical, reasonable investor, typical of the

holders of **Claims**, to make an informed judgment in exercising its rights either to accept or reject the **Plan**.

2.02    The information contained in this Disclosure has been derived from information submitted by the **Debtor**, unless specifically stated to be from other sources.

2.03    No representations concerning the **Debtor** are authorized by the **Debtor** other than those set forth in this Disclosure.  The **Debtor** recommends that any representation or inducement made to secure your acceptance or rejection of the **Plan** which is not contained in this Disclosure should not be relied upon by you in reaching your decision on how to vote on the **Plan**.  Any representation or inducement made to you not contained herein should be reported to the attorneys for **Debtor** who shall deliver such information to the **Court** for such action as may be appropriate.

2.04    ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES.    IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE OR UPON THE MERITS OF THE PLAN.  ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

2.05    THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE.  THE APPROVAL BY THE COURT OF THIS DISCLOSURE DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

2.06    THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED.  CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN. IN A LIQUIDATION IT IS LIKELY TEXAS BANK WOULD FORECLOSE ON THE PROJECT LEAVING ANY INFERIOR CLAIMANTS UNPAID.

2.07    DEBTOR    DOES    NOT    WARRANT    OR    REPRESENT    THAT    THE

INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.   THE STATEMENTS CONTAINED IN THIS DISCLOSURE ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

### ARTICLE III.
### FINANCIAL PICTURE OF THE DEBTOR

**Financial History and Background of the Debtor**

**History**

3.01 The Debtor is a corporation. It owns the property at 2909 Michelle Dr., Sherman, Texas which is a hotel. The property is operated as a Holiday Inn Express.

**Financials**

3.02   Currently the Debtor is under Chapter 11 bankruptcy reorganization and therefore an income report is filed monthly with the court.   Those are available online at www.txeb.uscourts.gov and at the Clerk's Office for the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.  A copy of historic operating statements are attached hereto as ***Exhibit "2"***.

**Future Income and Expenses Under the Plan**

**Projections**

3.03.   The **Debtor**'s projections of plan payments are set forth as ***Exhibit "3"***.   Dollars to fund the **Plan** will come from the continued operations of the **Debtor's** business and the equity interest holder who is making a contribution under the Plan.  The damage to the hotel was from a flood in 2011 which caused the hotel to shut down. There has been an ongoing dispute over insurance funding for the repairs and the use of such funds by the Debtor. The Bank is currently holding the bulk of such funds and claims that they are its collateral. As such the Debtor has been unable to repair the hotel.

The repairs will cost between $300,000 and $450,000. The Debtor is getting new monies through the Plan to make the repairs to the hotel and reopen the hotel. The repairs are primarily carpet replacement, wood repair and paint. The flood was caused by freezing pipes. Some of the repairs have already been completed – such as the elevator repairs.

The Debtor has formulated a reasonable monthly payment plan.

# ARTICLE IV.
## ANALYSIS AND VALUATION OF PROPERTY

### Real Property

4.01.    The **Debtor** owns the property at 2909 Michelle Dr. Sherman, Texas  75092.  The Debtor has valued the property at $3,500,000-$3,800,000. The original scheduled value was based on an appraised value the Debtor obtained just prior to the filing of the bankruptcy case.

4.02.    Based on the efforts to rent out rooms the Debtor believes that its projections are reasonable and the property will be able to sustain the projected plan payments not to mention the additional capital being added as part of confirmation by the equity owners. The Debtor can reduce costs in lieu of increasing income in order to meet its projections.  The Debtor contends that it will be able to make the required Plan payments.

4.03.    Debtor believes that it will be able to refinance or sell the property before the end of the Plan term.

4.04.    Debtor contends that a balloon payment plan to the secured Lender is not impermissible so long as the Lender receives the present value of its Allowed Secured Claim.

4.05.    **Debtor** owns the personal property described as follows as of the Petition Date:

| | | |
|---|---|---|
| Utility Deposits | $3,000.00 | Subject to Claims of Utility Companies |
| Accounts Ledger | $11,768.00 | Subject to Claims of United Central Bank |
| Insurance Claims | $1,000,000.00 est. | Subject to Claims of United Central Bank and other creditors claiming against insurance proceeds |
| Office Equipment[1] | $53,000.00 | Subject to Claims of United Central Bank and other small secured creditors with |
| Equipment[2] | $19,000.00 | |

---

[1] Figured into Value of Real Property.
[2] Figured into Value of Real Property.

| Furniture & Fixtures[3] | $848,211.00 | claims on Hotel personal property |
|---|---|---|
| Linens[4] | $   2,000.00 | |

The Debtor has prepared this Analysis based on its opinion of the value of the assets and the hard asset numbers match the numbers used in its Schedules filed with this Court.

### Liquidation Value of Assets

The projected amount of unsecured debt is $3,868,486 taking into account the unsecured amounts owed to secured creditors. The projected amount available to unsecured creditors in a liquidation is clearly 0. The Debtor has prepared this Liquidation Analysis based on its opinion of the value of its assets.

Property Real and Personal        $3,500,000        Liquidation Value $3,000,000
Debts:  Secured                         $6,683,971        Unsecured  $868,486

Value to Unsecured Creditors in Liquidation -0-

## ARTICLE V.
## SUMMARY OF THE PLAN

The Plan consists of the following Classes of Claims:                    Projected        Month

**Class 1** consists of any Allowed Administrative Claims.                    $25,000        1

**Class 2** consists of any Allowed Secured Tax Creditor Claims            $148,166        $3296(60)

(including ad valorem tax claims).

**Class 3** consists of any Allowed Priority Creditor Claims

(not TWC and Comptroller).                                                          $54,317        $976(60)

**Class 4** consists of Allowed Secured Claim of United Central Bank.    $3,500,000        $18,960(36)

**Class 5** consists of Allowed Secured Claim of Lakhwinder Guru.        $4,000        $72(60)

---

[3] Figured into Value of Real Property.
[4] Figured into Value of Real Property.

| | | |
|---|---|---|
| **Class 6** consists of Allowed Secured Claims of Maluk Dhami. | $8,000 | $144(60) |
| **Class 7** consists of Allowed Secured Claim of Property Tax Lending. | $403,000 | $7242.00(60) |
| **Class 8** consists of the Allowed Secured Claims of Insurance Proceeds Claimants. | $250,000 | 1 |
| **Class 9** consists of the Allowed General Unsecured Claims. | $3,868,486 | $2000(60) |
| **Class 10** consists of any Allowed Priority Creditor Claims (TWC and Comptroller). | $3784 | $70(60) |
| | $58,102 | $1044(60) |
| **Class 11** consists of DG LLC Equity Interest Holders. | | |

**Class 1 Claims**. The Class 1 Claims are estimated to be $35,000. The Allowed amount of Class 1 Claims will be paid once Allowed in full by DG LLC and on or before the Effective Date. These claims are priority claims pursuant to Section 507(a)(1) of the Bankruptcy Code. These claims include claims for DG LLC'S attorney's fees and U.S. Trustee's fees. U.S. Trustee's fees must be paid until the case is closed. DG LLC must file quarterly reports following confirmation and until the case is closed. The Class 1 Claims may agree to a different treatment which will be set forth in writing.

**Class 2 Claims**. The estimated amount of Class 2 Claims are based on tax years prior to the Petition Date. The claims against Debtor and its property for past due ad valorem taxes for years prior to tax year 2012 shall be paid over 60 months from the Confirmation Date. These creditors shall retain their liens to secure their claims until paid in full under this Plan. The Class 2 Claims shall be paid interest from the Petition Date at the rate of 1% per month from the Petition Date through the Effective Date of the Plan and 12% per annum following the Effective Date until paid in full. In the event that DG LLC disputes such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed. While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed. In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for DG LLC. Such default must be cured by DG LLC within 10 business days of the date of transmission of such notice of default. In the event the default is not cured, the Class 2 Claimants shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Class 2 Claimants shall only be required to provide two notices of default. Upon a third event of default, (i) the Class 2 Claimants shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes prior to delinquency shall constitute an event of default. These claims are secured claims.

The Class 2 Claims are Impaired and the holders of the Class 2 Claims are entitled to vote to accept or reject the Plan.

**Class 3 Claims**. The Class 3 Claims will be paid once Allowed over five (5) years from the Effective Date with interest on such amounts at the rate of 3% per annum until paid in full. These claims will be paid in equal monthly payments over 60 months, beginning on the 15th day of the first month after the Effective Date.

The Class 3 Claims are impaired and the holders of the Class 3 Claims are entitled to vote to accept or reject the Plan.

**Class 4 Claim**. The Allowed Secured Claim of United Central Bank.

a.      The Class 4 Claim is an Allowed Secured Claim and shall be based on $3,500,000.00 or such amount as determined by the Court as of the Confirmation Date as its Allowed Secured Claim based on a 25 year amortization with interest on such amount at a rate of prime (Wallstreet Prime Rate) plus 1% per annum for the first year following the Confirmation Date and at a rate of prime (Wallstreet Prime Rate) plus 2% per annum for the second and third years following the Confirmation Date. Principal and interest shall be due and payable monthly in equal monthly payments on the first day of the month and shall continue on the first day of each month thereafter until paid in full. The full balance shall be due 36 months following the Effective Date. Taxes for the current year shall be escrowed in a tax escrow account on a monthly basis starting on the Effective Date and shall be paid along with the mortgage payment at the rate of 1/12 per month. The Allowed Secured Claim shall be reduced by the insurance proceeds that are being held by United Central Bank (less the amounts paid from such proceeds to the Class 8 Claimants).  Any future insurance proceeds shall also be paid to United Central Bank less the costs of collection of such proceeds to reduce the amount of the Allowed Secured Claim of United Central Bank. The total projected proceeds payable to United Central Bank is in excess of $750,000.

b.      United Central Bank shall be secured for an Allowed Secured Claim on DG LLC("Debtor") real and personal property described in its loan documents and financing statements (the "Collateral"), in the amount of approximately $3,500,000.00 or such amount as determined by the Court as of the Confirmation Date. This amount does not take into consideration the adequate protection payments, if any made during the pendency of this case. Any unsecured claim of United Central Bank shall be treated in Class 9 of the Plan.

c.      The security interest and liens granted to United Central Bank under the Plan and Order Confirming Plan shall constitute valid and duly perfected security interests and liens, and either the Order Confirming Plan or the Plan shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the security interests and liens upon the collateral granted to United Central Bank hereunder, and United Central Bank shall not be required to file, record or serve any financing statements, mortgages, notice or other documents which may otherwise be required under federal or state law in any jurisdiction or to take any other action (including the taking of possession) to validate or perfect such post-petition security interest and liens. If

United Central Bank shall, in its discretion, elect for any reason to file any such financing statements, mortgages, notices or other documents with respect to such security interests and liens, or take any other action to evidence or perfect same, the Debtor is authorized and required to, or cause to be executed, all such financing statements, deeds of trust, notices or other documents upon United Central Bank's request. United Central Bank may, in its discretion, file a copy of either the Order Confirming Plan or the Plan in any filing or recording office in any jurisdiction in which the Debtor may have an interest in property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of either the Order Confirming Plan or the Plan in accordance with applicable law.

d. The unmodified terms of United Central Bank's pre-Petition Date loan documents are not modified by the Plan or Confirmation Order unless specifically stated in the Plan, and the Debtor is obligated thereunder, such that United Central Bank's pre-Petition Date loan documents are enforceable against the Debtor except as specifically stated herein, and in the event of a default by Debtor in its obligations to United Central Bank under the Plan, will be fully enforceable. If requested by United Central Bank, Debtor shall execute all necessary loan and related documents with the terms stated in this Plan.

e. If the Debtor fails to make any of the payments to United Central Bank described herein, United Central Bank may provide the Debtor with written notice of such default, which notice may be emailed to Debtor's counsel.  The Debtor shall have 20 business days to cure such default. In the event the default is not cured, the automatic stay shall be modified to permit United Central Bank to post foreclosure notices and to foreclose on its liens and security interests in the Debtor's property.  United Central Bank shall only be required to provide two notices of default a year.  Upon a third event of default, the automatic stay shall be modified to permit United Central Bank to post foreclosure notices and to foreclose on its liens and security interests in the Debtor's property without further notice.

f. Should this Section of the Plan for treatment of United Central Bank's Claim contradict any other provision in the Plan, the provisions of this Section shall control.

g. The Class 4 Claim is Impaired and the holder of the Class 4 Claim is entitled to vote to accept or reject the Plan.

 **Class 5 Claim**. The Class 5 Claim will be paid once Allowed over 60 months. The payments shall be made in equal monthly payments of principal and interest at the rate of 3% per annum on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid as called for by this Plan. The Class 5 Claim shall retain its lien under the Plan until paid in full.

The Class 5 Claim is Impaired and the holder of the Class 5 Claim is entitled to vote to accept or reject the Plan.

**Class 6 Claim.** The Class 6 Claim will be paid once Allowed over 60 months. The payments shall be made in equal monthly payments of principal and interest at the rate of 3% per annum on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid as called for by this Plan. The Class 6 Claim shall retain its lien under the Plan until paid in full.

The Class 6 Claim is Impaired and the holder of the Class 6 Claim is entitled to vote to accept or reject the Plan.

**Class 7 Claim.** The Class 7 Claim will be paid once Allowed over 60 months. The payments shall be made in equal monthly payments of principal and interest at the rate of 3% per annum on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid as called for by this Plan. The Class 7 Claim shall retain its lien under the Plan until paid in full.

The Class 7 Claim is Impaired and the holder of the Class 7 Claim is entitled to vote to accept or reject the Plan.

**Class 8 Claims.** The Class 8 Claims will be paid their Allowed Claims from the Insurance Proceeds held by United Central Bank upon determination by the Court that they have a valid claim against such proceeds. To the extent that such claims are not Allowed against such proceeds they shall have a Class 9 Claim.

The Class 8 Claims are Impaired and the holder of a Class 8 Claims are entitled to vote to accept or reject the Plan.

**Class 9 Claims.** The Class 9 Claims will be paid $2000.00 a month which amount shall be shared pro rata among the Allowed Class 9 Claimants for a period of 60 months. The payments shall be made on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid as called for by this Plan.

The Class 9 Claims are Impaired and the holder of a Class 9 Claims are entitled to vote to accept or reject the Plan.

**Class 10 Claims.** The Class 10 Claims will be paid once Allowed as follows: Over five (5) years from the Petition Date with interest on such amounts at the rate of 4.25% per annum until paid in full. These claims will be paid in equal monthly payments over 60 months, beginning on the 15th day of the first month after the Effective Date. Nothing in this Plan shall prevent the Class 10 Claimant from setting off amounts that may be due and owing to a Class 10 Claimant. Any provision in this Plan that would be construed as preventing a set-off is void and of no effect as to a Class 10 Claimant.

The Class 10 Claims are impaired and the holders of the Class 10 Claims are entitled to vote to accept or reject the Plan although their votes do not count towards confirmation.

**Class 11 - Equity Interests**. On the Confirmation Date, all Equity Interests shall be treated as follows:

On the Effective Date, all Existing Membership Interests in the Debtor shall be cancelled. The new membership interests in the Reorganized Debtor shall be issued 100% to Jag Dhillon who is contributing a minimum $350,000.00 to the Reorganized Debtor to be used to fund the Plan.  Such monies will be specifically used to make repairs at the hotel and to cover debt service while such repairs are being made. These monies will allow the hotel to get up and running in approximately 60-90 days from the Confirmation Date.

The Debtor believes that the Plan will not violate the absolute priority rule and will be consensual as to the unsecured creditors.  In the event that the Class 9  unsecured creditors do not vote for the Plan, and the Bankruptcy Court requires an auction, then: (i) the Existing Membership Interests will be cancelled on the Effective Date, (ii) the new membership interests in the Reorganized Debtor shall be sold at an Auction sale as set forth herein, and (iii) the new equity interests in the Reorganized Debtor shall be issued to the successful bidder for the interest in the Debtor at the Auction, subject to the terms of this Plan.  If the Plan is not confirmed by the Court at the Confirmation Hearing, then the sale of the equity interests shall not proceed and the sale shall be cancelled.   The Reorganized Debtor shall remain the same corporate entity, without change in its structure.

The auction (the "Auction") under the Plan shall be held at the Confirmation Hearing. Any person or entity that desires to be considered for a possible bid must serve on counsel for the Debtor at least seven business days prior to the Confirmation Hearing the following bid and supporting information (collectively, a "Bid") (i) a copy of its proposed bid containing the cash purchase price for the membership interests in Reorganized Debtor, and all terms and conditions of the Bid, (ii) information identifying the proposed purchaser and all persons or entities who will own or control the proposed purchaser, (iii) information identifying the financial ability of the proposed purchaser and all persons or entities who will own or control the proposed purchaser to perform the Plan, and (iv) information identifying the relevant experience and management of the proposed purchaser and all persons or entities who will own or control the proposed purchaser to perform the Plan.   The Debtor and any other party- in- interest may object to any proposed Bid for any reason. Any successful auction purchaser shall need franchisor approval and may be required to guaranty their contract.

If an Auction proceeds, the new equity membership interests in Reorganized Debtor shall be sold for the highest and best bid, consistent with the terms of the Plan and subject to objections by creditors and parties-in-interest.  Jag Dhillon opening bid at an Auction sale is $350,000.00 for 100 percent of the new membership interests and his agreement to manage the hotel during the life of the Plan without a management fee. Any Bid by another person or entity must exceed

$350,000 by at least $10,000 and must provide for management of the hotel without charge to the Debtor or its estate.  The Debtor can propose to take the highest and best cash offer for the purchase of the new membership interests in the Reorganized Debtor at the time of the Hearing on Confirmation, so long as the cash purchase price exceeds $350,000. Even if a person or entity other than Jag Dhillon is the successful bidder for the new membership interests in Reorganized Debtor under this Plan, the Plan and the rights and treatment of creditors and claims under the Plan are not impaired, changed or affected.  Any winning bidder for the new membership interests in the Reorganized Debtor acquires such new membership interests subject to (and must expressly assume): (i) the Plan, (ii) the Reorganized Debtor's duties and obligations under the Plan, (iii) the allowance and treatment of claims, rights and liens under the Plan and the rights and remedies of creditors under the Plan and the obligations of the Reorganized Debtor and the purchaser at the Closing. The Debtor shall solicit such bids by noticing this Plan out to the creditors in this case. The equity interest holders are impaired under the Plan.

The Equity Interest holders are Impaired under the Plan.

## ARTICLE VI.
## MEANS FOR IMPLEMENTATION OF PLAN

**6.01    Implementation of Plan**.  This Plan will be implemented, pursuant to § 1123(a)(5) of the Code, by the commencement of payments as called for above.

## ARTICLE VII.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01.    Rejection of Executory Contracts and Unexpired Leases**.  Debtor shall assume, pursuant to Bankruptcy Code Section 1123(b)(2), its unexpired leases of real property and executory contracts by separate motion and order prior to the Confirmation Date or as part of Confirmation of a Plan in this case.

**7.02.    Reservation of Rights**. The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code) and to the terms of this Plan.

**7.03.    Bar Date for Claims Based on Rejection**.  If the rejection of an executory contract or an unexpired lease by the Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtor or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other

deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however*, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor of any objections to such Claim if asserted.

## ARTICLE VIII.
## FEASIBILITY OF PLAN

8.01.    **Debtor** asserts that its **Plan** is feasible based on *Exhibit "3"*.

**Procedure for Filing Proofs of Claims and Proofs of Interests**

8.02.    All proofs of claims and proofs of interests must be filed by those **Claimants** and **Equity Interest Holder** who have not filed such instruments on or before the **Bar Date** fixed by the **Court**.

8.03.    If **Claimants** have already filed a proof of claim with the **Court** or are listed in the **Debtor**'s Schedules as holding non-contingent, liquidated and undisputed claims, a proof of claim need not be filed.  The schedules and amendments thereto are on file with the **Court** and are open for inspection during regular **Court** hours.  If the equity security interest of an **Equity Interest Holder** is properly reflected in the book and records of the **Debtor**, a proof of interest need not be filed.

## ARTICLE IX.
## ALTERNATIVES TO DEBTOR'S PLAN

9.01.    If the **Debtor**'s **Plan** is not confirmed, the **Debtor**'s bankruptcy case may be converted to a case under Chapter 7 of the **Code**, in which case a trustee would be appointed to liquidate the assets of the **Debtor** for distribution to its **Creditors** in accordance with the priorities of the **Code**.  Since the Debtor's assets are subject to liens that there would be no distribution to unsecured creditors in Chapter 7.

## ARTICLE X.
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

10.01.    **Claimants** should be aware that there are a number of substantial risks involved in consummation of the **Plan**.  The **Plan** contemplates that the **Debtor**'s business will generate revenue sufficient to pay the obligations accruing from its operations.  The **Debtor** does not "guarantee" that the expenses will equal those in the projections; however, the **Debtor** believes

that the projections are reasonable.

## ARTICLE XI.
## TAX CONSEQUENCES TO THE DEBTOR

TO ENSURE COMPLIANCE WITH U.S. TREASURY DEPARTMENT CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF UNITED STATES FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED UPON, BY HOLDERS OF CLAIMS OR INTERESTS OR ANY OTHER PERSONS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS OF CLAIMS OR ANY OTHER PERSONS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF U.S. TREASURY DEPARTMENT CIRCULAR 230) OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISER.

A. Introduction

The following discussion summarizes certain material U.S. federal income tax consequences of the Plan to the Debtor and holders of Claims and Interests. The summary is provided for general informational purposes only and is based on the United States Internal Revenue Code of 1986, as amended (the "Tax Code"), the treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice, all as in effect as of the date hereof (except as otherwise noted below with regard to the American Recovery and Reinvestment Act of 2009), and all of which are subject to change, possibly with retroactive effect. Changes in any of these authorities or in their interpretation could cause the United States federal income tax consequences of the Plan to differ materially from the consequences described below. The United States federal income tax consequences of the Plan are complex and in important respects uncertain. No ruling has been requested from the Internal Revenue Service (the "Service"); no opinion has been requested from Debtor's counsel concerning any tax consequence of the Plan; and no tax opinion is given by this Disclosure Statement.

The following discussion does not address all aspects of federal income taxation that may be relevant to a particular holder of a Claim or Interest in light of its particular facts and circumstances or to particular types of holders of Claims subject to special treatment under the Tax Code. For example, the discussion does not address issues of concern to broker-dealers or other dealers in securities, or foreign (non-U.S.) persons, nor does it address any aspects of state, local, or foreign (non-U.S.) taxation, or the taxation of holders of Interests in a Debtor. In addition, a substantial amount of time may elapse between the Confirmation Date and the receipt of a final distribution under the Plan. Events subsequent to the date of this Disclosure Statement,

such as the enactment of additional tax legislation, court decisions or administrative changes, could affect the federal income tax consequences of the Plan and the transactions contemplated hereunder.

**On February 13, 2009, the House of Representatives and the Senate passed H.R.1, the American Recovery and Reinvestment Act of 2009 (the Recovery Act), a stimulus bill that includes tax breaks for businesses and individuals. The President signed the Recovery Act on February 17, 2009. The following discussion does not address any aspects of the Recovery Act, some of which may be relevant to a particular holder of a Claim or an Interest**.

**THE DISCUSSION THAT FOLLOWS IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND PROFESSIONAL TAX ADVICE BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH ITS TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.**

B. Certain Definitions
Except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein or in the Plan shall have the respective meanings assigned to them in this Article.

"*COD*" shall mean cancellation of indebtedness income.
"*NOL*" shall mean net operating loss.

C. Certain Material Federal Income Tax Consequences to the Debtor

Cancellation of a Debtor's debt is generally taxable income to the Debtor. COD is the amount by which the indebtedness of a Debtor discharged exceeds any consideration given in exchange therefore. Cancellation of a debt may not necessarily be COD, however. To the extent that the Debtor is insolvent, or if the Debtor is in bankruptcy, as is the case here, the Tax Code permits the Debtor to exclude the COD from its gross income. The statutory exclusion for COD in a title 11 case generally excludes COD from gross income if the discharge is granted by a court to a Debtor under its jurisdiction in a title 11 case, as is sought herein.

The price for the bankruptcy COD exclusion (as well as the insolvency exclusion) is reduction of the Debtor's tax attributes to the extent of the COD income, generally in the following order: NOLs for the year of the discharge and NOL carryovers from prior years; general business tax credit carryovers; minimum tax credit available as of the beginning of the year following the year of discharge; net capital loss for the year of discharge and capital loss carryovers from prior years; basis of the Debtor's assets; passive activity loss and credit carryovers from the year of discharge; and foreign tax credit carryovers to or from the year of discharge. The reduction of attributes does

not occur until after the end of the Debtor's tax year in which the COD occurred, so they are available to the Debtor in determining the amount of its income, loss and tax liability for the year of discharge.

As a result of the implementation of the Plan, the Debtors will have COD and potential attribute reduction. Because any reduction in tax attributes does not effectively occur until the first day of the taxable year following the taxable year in which the COD is incurred, the resulting COD, on its own, should not impair the ability of the Debtor to use their tax attributes (to the extent otherwise available) to reduce their tax liability, if any, otherwise resulting from the implementation of the Plan.

Under section 382 of the Tax Code, if a corporation undergoes an "ownership shift," the amount of its Pre-Change Losses that may be utilized to offset future taxable income generally is subject to an annual limitation. Although the Plan allows for an ownership change it is doubtful that one will occur and as such any owner of the Debtor should consult his own tax adviser concerning the effect of the Plan.

The United States federal income tax consequences of payment of Allowed Claims pursuant to the Plan will depend on, among other things, the consideration received, or deemed to have been received, by the holder of the Allowed Claim, whether such holder reports income on the accrual or cash method, whether such holder receives distributions under the Plan in more than one taxable year, whether such holder's Claim is allowed or disputed at the Effective Date, whether such holder has taken a bad debt deduction or worthless security deduction with respect to its Claim.

In general, a holder of a Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the amount of such holder's basis in its Claim. Any gain or loss recognized in the exchange may be long-term or short-term capital gain or loss or ordinary income or loss, depending upon the nature of the Claim and the holder, the length of time the holder held the Claim and whether the Claim was acquired at a market discount. If the holder realizes a capital loss, its deduction of the loss may be subject to limitations under the Tax Code. The holder's aggregate tax basis for any property received under the Plan generally will equal the amount realized. The amount realized by a holder generally will equal the sum of the cash and the fair market value of any other property received (or deemed received) by the holder under the Plan on the Effective Date and/or any subsequent distribution date, less the amount (if any) allocable to Claims for interest. All holders of Allowed Claims are urged to consult their tax advisors. A holder of a Claim constituting an installment obligation for tax purposes may be required to recognize currently any gain remaining with respect to the obligation if, pursuant to the Plan, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold or otherwise disposed of within the meaning of Section 453B of the Tax Code.

D. Importance of Obtaining Professional Tax Assistance

The foregoing discussion is intended only as a summary of certain U.S. federal income tax consequences of the Plan, and is not a substitute for careful tax planning with a tax professional. The above discussion is for general information purposes only and is not tax advice. The tax consequences are in many cases uncertain and may vary depending on a holder's individual circumstances.

HOLDERS OF CLAIMS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.

### ARTICLE XII.
### PENDING LITIGATION

12.01.   As of the date of the filing of this Disclosure the significant matters filed in this case are:

| Filing Date | # | Docket Entry (Edited) |
|---|---|---|
| 12/14/2011 | 8 | Motion to Dismiss Case or Alternatively to Transfer Based on Lack of Venue (Rule 1014) Filed by United Central Bank Modified on 12/15/2011 to add additional statistical data/event codes. |
| 12/14/2011 | 11 | Motion for Order Shortening Time Filed by United Central Bank |
| 12/14/2011 | 16 | Motion to Transfer Case/Change Venue (Inter-district) Filed by United Central Bank |
| 12/15/2011 | 17 | Motion Regarding Chapter 11 First Day Motions Cash Collateral with Proposed Order Filed by Dhilion Group, LLC |
| 12/15/2011 | 18 | Motion Regarding Chapter 11 First Day Motions Use of Utilities with Proposed Order Filed by Dhilion Group, LLC |
| 12/16/2011 | 26 | Motion for Order Shortening Time with Proposed Order Filed by Dhilion Group, LLC |
| 02/03/2012 | 56 | Motion for Relief from Automatic Stay With Waiver of 30-Day Hearing Requirement As To 2909 Michelle Dr., Sherman, TX (Holiday Inn Express) Filed by United Central Bank Additional attachment(s) added on 2/21/2012. |
| 02/08/2012 | 62 | Motion to Dismiss Chapter 11 Case With Waiver of 30-Day Hearing Requirement and Setting Hearing Filed by US Trustee Hearing scheduled for 3/5/2012. |

| 03/01/2012 | 77 | Motion to Continue Hearing Filed by Dhillon Group, LLC |
|---|---|---|

## ARTICLE XIII.
## SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE CASE

13.01.  As of the date of the filing of this Disclosure the following significant orders have been entered in this case:

| Filing Date | # | Docket Entry (Edited) |
|---|---|---|
| 12/14/2011 | 14 | Order Shortening Time For Hearing on Motion to Dismiss for Improper Venue (Local Rule 9006) |
| 12/19/2011 | 28 | Order Shortening Time For Hearing On First Day Motions |
| 01/11/2012 | 49 | Order On Motion Of United Central Bank For Dismissal For Improper Venue Or, Alternatively, For Change Of Venue. (Inter-district) Case Number: 11-53706 Transfer Case 1/26/2012. Modified on 1/30/2012. (Entered: 01/27/2012) |
| 02/22/2012 | 68 | Order on Debtor's Application to Employ Counsel |
| 02/24/2012 | 71 | Order Granting Application to Employ Samir Patel as Accountant Filed by Dhillon Group, LLC |
| 03/01/2012 | 78 | Order Granting Motion To Continue/Reschedule Hearing On Motion to Dismiss Chapter 11 Case With Waiver of 30-Day Hearing Requirement filed by U.S. Trustee |
| 03/07/2012 | 81 | Order Granting Admission To Practice, Pro Hac Vice, Motion Belfor USA Group, Inc. |
| 03/12/2012 | 84 | Order Approving Application to Employ The Beckham Group as Attorney Filed by Dhilion Group, LLC. |

**Respectfully Submitted:**

By: /s/ Joyce Lindauer

Joyce Lindauer

Attorney at Law

Texas Bar No. 21555700

8140 Walnut Hill Lane

Suite 301 Dallas, TX  75231

Tel: (972) 503-4033

Fax: (972) 503-4034

**COUNSEL FOR THE DEBTOR**


/s/_Jag Dhillon _____

for Dhillon Group, LLC