**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| IN RE: § | |
| § | |
| DHILLON GROUP, LLC, § | |
| § | CASE NO. 12-40163 |
| § | Chapter 11 |
| § | |
| DEBTOR. § | |

**FIRST AMENDED PLAN OF REORGANIZATION DATED**
**APRIL 26, 2012**

    Dhillon Group, LLC ("DG LLC") proposes the following First Amended Plan of Reorganization ("Plan") Dated April 26, 2012 pursuant to Chapter 11 of the United States Bankruptcy Code on behalf of the DG LLC. DG LLC's profitability to fund the Plan is based on the amount of money that it will earn. DG LLC will file periodic financial reports with the Court as required by the Code covering its profitability, projections of cash receipts and disbursements for a reasonable period and a comparison of actual cash receipts and disbursements with projections in prior reports. These reports shall be available on the Court's PACER site at www.txeb.uscourts.gov using DG LLC's name and/or case number as referenced above.

# TABLE OF CONTENTS

ARTICLE I DEFINITIONS AND USE OF TERMS ....................................................... 3

ARTICLE II CONCEPT OF THE PLAN ...................................................................... 7

ARTICLE III GENERAL TERMS AND CONDITIONS ................................................ 7

ARTICLE IV DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ............ 7

ARTICLE V PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS… 8

ARTICLE VI MEANS FOR IMPLEMENTATION OF PLAN ....................................... 14

ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES ............................................................................................... 14

ARTICLE VIII ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS .. 15

ARTICLE IX EFFECT OF CONFIRMATION ............................................................. 16

ARTICLE X MISCELLANEOUS PROVISIONS ........................................................ 17

ARTICLE XI MODIFICATION OF THE PLAN ........................................................... 18

ARTICLE XII RETENTION OF JURISDICTION ........................................................ 19

# ARTICLE I
# DEFINITIONS AND USE OF TERMS

**1.01    Defined Terms.** Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this section 1.01.

**1.01.01 Administrative Claim or Expense** means an administrative expense or Claim described in Section 503 of the Bankruptcy Code and entitled to administrative priority pursuant to Section 507(a)(1) of the Bankruptcy Code, including, but not limited to, Claims for compensation of professionals made pursuant to Sections 330 and 331 of the Bankruptcy Code, and all fees and charges assessed against DG LLC and its property under 28 U.S.C. Section 1930.

**1.01.02 Administrative Tax Claim** means an Unsecured Claim by any governmental unit for taxes (including interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through the Effective Date.

**1.01.03 Allowed Claim** means a Claim against DG LLC allowable under the Bankruptcy Code to the extent that (i) a proof of Claim, proof of Interest, or request for payment was timely Filed or, with leave of the Bankruptcy Court, late Filed, and as to which no objection has been timely Filed or, if Filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely Filed or, if Filed, is allowed by a Final Order or (iii) a Claim allowed pursuant to this Plan.

**1.01.04 Allowed Secured Claim** means any Allowed Claim secured by a lien, security interest, or other charge or interest in property in which DG LLC has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.05 Bankruptcy Code or Code** means the United States Bankruptcy Code, Title 11 of the United States Code Section 101 et seq., as amended.

**1.01.06 Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of Texas, or such other court that may have jurisdiction with respect to the reorganization of DG LLC pursuant to Chapter 11 of the Bankruptcy Code.

**1.01.07 Bankruptcy Rule** means the Federal Rules of Bankruptcy Procedure.

**1.01.08 Bar Date** means subsequent to which a proof of pre-petition Claim may not timely be Filed or the date by which proofs of claims held by governmental agencies must be filed.

**1.01.09 Case** means this Chapter 11 Bankruptcy Case in the Bankruptcy Court.

**1.01.10 Claim** shall have the meaning set forth in Bankruptcy Code Section 101(5).

**1.01.11 Claimant** means any person or entity having or asserting a Claim in the case.

**1.01.12 Class or Classes** mean all of the holders of Claims or Interests that DG LLC has designated pursuant to Section 1123(a)(1) of the Bankruptcy Code as having substantially similar characteristics as described in Article IV of this Plan.

**1.01.13 Confirmation** means the entry by the Bankruptcy Court of a Confirmation Order confirming this Plan.

**1.01.14 Confirmation Date** means the date on which the Confirmation Order is entered.

**1.01.15 Confirmation Hearing** means the hearing or hearings held before the Bankruptcy Court in which the DG LLC will seek Confirmation of this Plan.

**1.01.16 Confirmation Order** means the Order of the Court confirming this Plan under Section 1129 of the Bankruptcy Code.

**1.01.17 Contested** when used with respect to a Claim, means a Claim against DG LLC (a) if no Proof of Claim was filed, a claim that is listed in DG LLC's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated and that is not allowed pursuant to this Plan; (b) a claim that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) if a Proof of Claim was filed, a claim as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

**1.01.18 Creditor** shall have the meaning specified by Section 101(9) of the Code.

**1.01.19 Disputed Claim** means any Claim that is not an Allowed Claim.

**1.01.20 Effective Date** means the later of the first business day that is fourteen days after the Confirmation Date.

**1.01.21 Estate** means the estate created pursuant to Bankruptcy Code Section 541 with respect to DG LLC.

**1.01.22 Fee Claim** means a Claim under Bankruptcy Code Sections 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in the DG LLC Chapter 11 case.

**1.01.23 Filed** means delivered to the Clerk of the Bankruptcy Court.

**1.01.24 Final Order** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition *for petition for certiorari,* or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari,* stay, new trial, reargument or rehearing thereof has been sought, (i) such

order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari,* or move for a stay, new trial, reargument or rehearing shall have expired; *provided, however,* that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

    **1.01.25** **General Unsecured Claim** means Unsecured Claim that is not entitled to priority under Section 507(a) of the Bankruptcy Code.

    **1.01.26** **HHFI** means Holiday Hospitality Franchising, Inc.

    **1.01.27 Impaired** means the treatment of an Allowed Claim pursuant to the Plan unless, with respect to such Claim, either (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim, or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, DG LLC (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim as such maturity existed before such default; (C) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (iii) the Plan provides that on the Effective Date, the holder of such Claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

    **1.01.28 DG LLC** shall mean, prior to the Confirmation Date, DG LLC, the debtor and debtor-in-possession in the Case, and shall mean, effective upon and after the Confirmation Date, DG LLC, as it exists as a reorganized debtor governed by the Plan and with the rights, obligations and duties set forth in the Plan.

    **1.01.29 License Agreement** means that certain Holiday Inn Express® Hotel License Agreement dated July 9, 2007 (as same may have been amended) between the Debtor and HHFI that permits the Debtor to operate a Holiday Inn Express® Hotel.

    **1.01.30 Petition Date** means December 5, 2011, the date DG LLC's petition was filed commencing this bankruptcy case. The case was originally filed in Nevada and transferred to Texas.

    **1.01.31** **Plan** means this Plan of Reorganization, as it may be amended or modified from time to time as permitted herein and by the Bankruptcy Court.

    **1.01.32 Pre-petition** means prior to the Petition Date.

    **1.01.33 Priority Tax Claim** means a Claim entitled to priority pursuant to Bankruptcy Code Section 507(a)(8).

    **1.01.34 Pro Rata** means proportionately, based on the percentage that the amount of an

Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

**1.01.35 Property of the Estate** means all property in which DG LLC or its bankruptcy Estate holds a legal or an equitable interest, including all property described in Bankruptcy Code Section 541. DG LLC shall remain in possession of all property of the Estate unless provided for otherwise in the Plan or Confirmation Order.

**1.01.36 Rejection Claim** means any Claim arising pursuant to Bankruptcy Code Section 502(g) by reason of rejection by DG LLC of an executory contract or unexpired lease pursuant to Bankruptcy Code Sections 365 or 1123(b)(2).

**1.01.37 Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest in property in which DG LLC or the Estate has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.38 Secured Tax Claim** means any Tax Claim which is secured by real or personal property.

**1.01.39 Secured Creditor** or **Secured Claimant** means any Claimant holding a Secured Claim.

**1.01.40 Unimpaired** means not Impaired.

**1.01.41 Unsecured Claim** means any Claim not collateralized (or the extent not fully collateralized) by assets of DG LLC.

**1.01.42 Unsecured Claimants** or **Unsecured Creditors** means any holder of an Unsecured Claim.

**1.01.43 Voidable Transfer** means all transfers voidable under Sections 544, 545, 547, 548, 549 and/or 550 of the Code or any other state or federal transfer.

**1.02 Number and Gender of Words.** Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

**1.03 Terms Defined in the Bankruptcy Code.** Capitalized terms not specifically defined in section 1.01 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

**1.04 Headings.** The headings and captions used in this Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

**1.05 Time Computation.** In computing any period of time prescribed herein, the provisions of Federal Rule of Bankruptcy Procedure Rule 9006(a) shall apply.

## ARTICLE II
## CONCEPT OF THE PLAN

**2.01 Generally**. The Plan is a plan of reorganization. DG LLC shall continue its business after the Effective Date. DG LLC's primary business is owning and operating a hotel in Sherman, Texas doing business as a Holiday Inn. DG LLC's business operations will provide the income and means for implementation of this Plan and are set forth in more detail in the accompanying Disclosure Statement.

## ARTICLE III
## GENERAL TERMS AND CONDITIONS

**3.01 Treatment of Claims.** This Plan is intended to resolve all Claims against DG LLC and/or the property of DG LLCof whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). However, only Allowed Claims will receive payments afforded by the Plan. The Plan is designed to insure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**3.02 Time for Filing Claims.** The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by DG LLC, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on DG LLC and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date. At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on DG LLC's counsel and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.

A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by DG LLC.

## ARTICLE IV
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

DG LLC designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123. DG LLC shall pay all fees assessed by the Office of the United States Trustee until this Case is closed by the Court or DG LLC is otherwise released from such obligations by the Court.

**4.01 Class 1** consists of any Allowed Administrative Claims.

**4.02 Class 2** consists of any Allowed Secured Tax Creditor Claims

(including ad valorem tax claims).

4.03 <u>Class 3</u> consists of any Allowed Priority Creditor Claims (not TWC or Texas State Comptroller).

4.04 <u>Class 4</u> consists of Allowed Secured Claim of United Central Bank.

4.05 <u>Class 5</u> consists of Allowed Secured Claim of Lakhwinder Guru.

4.06 <u>Class 6</u> consists of Allowed Secured Claims of Maluk Dhami.

4.07 <u>Class 7</u> consists of Allowed Secured Claim of Property Tax Lending.

4.08 <u>Class 8</u> consists of the Allowed Secured Claims of Insurance Proceeds Claimants.

4.09 <u>Class 9</u> consists of the Allowed General Unsecured Claims.

4.10 <u>Class 10</u> consists of any Allowed Priority Creditor Claims (TWC or Texas State Comptroller).

4.11 <u>Class 11</u> consists of DG LLC Equity Interest Holders.

## ARTICLE V
## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

The Claims and Interests classified in Article IV hereof shall be treated in the manner set forth in this Article V.

**Class 1 Claims.** The Class 1 Claims are estimated to be $35,000. The Allowed amount of Class 1 Claims will be paid once Allowed in full by DG LLC and on or before the Effective Date. These claims are priority claims pursuant to Section 507(a)(1) of the Bankruptcy Code. These claims include claims for DG LLC'S attorney's fees and U.S. Trustee's fees. U.S. Trustee's fees must be paid until the case is closed. DG LLC must file quarterly reports following confirmation and until the case is closed. The Class 1 Claims may agree to a different treatment which will be set forth in writing. Payment of post-petition franchise fees to HHFI shall continue to be paid in the ordinary course. HHFI is not required to file a request for payment of administrative expenses, as the requirement for Debtor to make all such payments in the ordinary course is incorporated into this Plan.

**Class 2 Claims.** The estimated amount of Class 2 Claims are based on tax years prior to the Petition Date. The claims against Debtor and its property for past due ad valorem taxes for years prior to tax year 2012 shall be paid over 60 months from the Confirmation Date. These creditors shall retain their liens to secure their claims until paid in full under this Plan. The Class 2 Claims shall be paid interest from the Petition Date at the rate of 1% per month from the Petition Date through the Effective Date of the Plan and 12% per annum following the Effective Date until paid in full. In the event that DG LLC disputes such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed. While resolution of any such objection is pending, payments pursuant to the Plan

shall be applied to the undisputed portion of the claim as ultimately allowed. In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for DG LLC. Such default must be cured by DG LLC within 10 business days of the date of transmission of such notice of default. In the event the default is not cured, the Class 2 Claimants shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Class 2 Claimants shall only be required to provide two notices of default. Upon a third event of default, (i) the Class 2 Claimants shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes prior to delinquency shall constitute an event of default. These claims are secured claims.

The Class 2 Claim of the IRS will be paid once Allowed over sixty (60) months with interest on such amounts at the rate of 3% per annum until paid in full. IRS shall retain its lien to secure its claim until paid in full under this Plan. The payments shall be made in equal monthly payments beginning on the 15th day of the first month after the Effective Date until paid in full.

The occurrence of any of the following shall constitute an event of default under the Plan:

1) **Failure to Make Payments.** Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan Debt. However, due to the size and ongoing nature of the IRS's claim, upon a default under the plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. As to the IRS:

(A) If the Debtor or its successor in interest fails to make any plan payment, or deposits of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the Debtor or its successor in interest failed to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

(B) If the United States declares the Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Debtor or the successor in interest.

(C) If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default, and upon the third event of Default the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan. All payments will be sent to: /IRS, 1100 Commerce Street, Mail Code **5024** DAL, Dallas, Texas 75242 attn Bill Morse.

(D) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS.

9 | P a g e

The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.

The Class 2 Claims are Impaired and the holders of the Class 2 Claims are entitled to vote to accept or reject the Plan.

**Class 3 Claims**. The Class 3 Claims will be paid once Allowed over five (5) years from the Effective Date with interest on such amounts at the rate of 3% per annum until paid in full. These claims will be paid in equal monthly payments over 60 months, beginning on the 15th day of the first month after the Effective Date.

The Class 3 Claims are impaired and the holders of the Class 3 Claims are entitled to vote to accept or reject the Plan.

**Class 4 Claim**. The Allowed Secured Claim of United Central Bank.

a. The Class 4 Claim is an Allowed Secured Claim and shall be based on $3,500,000.00 or such amount as determined by the Court as of the Confirmation Date as its Allowed Secured Claim based on a 25 year amortization with interest on such amount at a rate of prime (Wallstreet Prime Rate) plus 1% per annum for the first year following the Confirmation Date and at a rate of prime (Wallstreet Prime Rate) plus 2% per annum for the second and third years following the Confirmation Date. Principal and interest shall be due and payable monthly in equal monthly payments on the first day of the month and shall continue on the first day of each month thereafter until paid in full. The full balance shall be due 36 months following the Effective Date. Taxes for the current year shall be escrowed in a tax escrow account on a monthly basis starting on the Effective Date and shall be paid along with the mortgage payment at the rate of 1/12 per month. The Allowed Secured Claim shall be reduced by the insurance proceeds that are being held by United Central Bank (less the amounts paid from such proceeds to the Class 8 Claimants). Any future insurance proceeds shall also be paid to United Central Bank less the costs of collection of such proceeds to reduce the amount of the Allowed Secured Claim of United Central Bank. The total projected proceeds payable to United Central Bank is in excess of $750,000.

b. United Central Bank shall be secured for an Allowed Secured Claim on DG LLC("Debtor") real and personal property described in its loan documents and financing statements (the "Collateral"), in the amount of approximately $3,500,000.00 or such amount as determined by the Court as of the Confirmation Date. This amount does not take into consideration the adequate protection payments, if any made during the pendency of this case. Any unsecured claim of United Central Bank shall be treated in Class 9 of the Plan.

c. The security interest and liens granted to United Central Bank under the Plan and Order Confirming Plan shall constitute valid and duly perfected security interests and liens, and either the Order Confirming Plan or the Plan shall be sufficient and conclusive evidence

of the priority, perfection and validity of all of the security interests and liens upon the collateral granted to United Central Bank hereunder, and United Central Bank shall not be required to file, record or serve any financing statements, mortgages, notice or other documents which may otherwise be required under federal or state law in any jurisdiction or to take any other action (including the taking of possession) to validate or perfect such post-petition security interest and liens. If United Central Bank shall, in its discretion, elect for any reason to file any such financing statements, mortgages, notices or other documents with respect to such security interests and liens, or take any other action to evidence or perfect same, the Debtor is authorized and required to, or cause to be executed, all such financing statements, deeds of trust, notices or other documents upon United Central Bank's request. United Central Bank may, in its discretion, file a copy of either the Order Confirming Plan or the Plan in any filing or recording office in any jurisdiction in which the Debtor may have an interest in property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of either the Order Confirming Plan or the Plan in accordance with applicable law.

    d.    The unmodified terms of United Central Bank's pre-Petition Date loan documents are not modified by the Plan or Confirmation Order unless specifically stated in the Plan, and the Debtor is obligated thereunder, such that United Central Bank's pre-Petition Date loan documents are enforceable against the Debtor except as specifically stated herein, and in the event of a default by Debtor in its obligations to United Central Bank under the Plan, will be fully enforceable. If requested by United Central Bank, Debtor shall execute all necessary loan and related documents with the terms stated in this Plan.

    e.    If the Debtor fails to make any of the payments to United Central Bank described herein, United Central Bank may provide the Debtor with written notice of such default, which notice may be emailed to Debtor's counsel. The Debtor shall have 20 business days to cure such default. In the event the default is not cured, the automatic stay shall be modified to permit United Central Bank to post foreclosure notices and to foreclose on its liens and security interests in the Debtor's property. United Central Bank shall only be required to provide two notices of default a year. Upon a third event of default, the automatic stay shall be modified to permit United Central Bank to post foreclosure notices and to foreclose on its liens and security interests in the Debtor's property without further notice.

    f.    Should this Section of the Plan for treatment of United Central Bank's Claim contradict any other provision in the Plan, the provisions of this Section shall control.

    g.    The Class 4 Claim is Impaired and the holder of the Class 4 Claim is entitled to vote to accept or reject the Plan.

    **Class 5 Claim**. The Class 5 Claim will be paid once Allowed over 60 months. The payments shall be made in equal monthly payments of principal and interest at the rate of

3% per annum on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid as called for by this Plan. The Class 5 Claim shall retain its lien under the Plan until paid in full.

The Class 5 Claim is Impaired and the holder of the Class 5 Claim is entitled to vote to accept or reject the Plan.

**Class 6 Claim**. The Class 6 Claim will be paid once Allowed over 60 months. The payments shall be made in equal monthly payments of principal and interest at the rate of 3% per annum on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid as called for by this Plan. The Class 6 Claim shall retain its lien under the Plan until paid in full.

The Class 6 Claim is Impaired and the holder of the Class 6 Claim is entitled to vote to accept or reject the Plan.

**Class 7 Claim**. The Class 7 Claim will be paid once Allowed over 60 months. The payments shall be made in equal monthly payments of principal and interest at the rate of 3% per annum on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid as called for by this Plan. The Class 7 Claim shall retain its lien under the Plan until paid in full.

The Class 7 Claim is Impaired and the holder of the Class 7 Claim is entitled to vote to accept or reject the Plan.

**Class 8 Claims**. The Class 8 Claims will be paid their Allowed Claims from the Insurance Proceeds held by United Central Bank upon determination by the Court that they have a valid claim against such proceeds. To the extent that such claims are not Allowed against such proceeds they shall have a Class 9 Claim.

The Class 8 Claims are Impaired and the holder of a Class 8 Claims are entitled to vote to accept or reject the Plan.

**Class 9 Claims**. The Class 9 Claims will be paid $2000.00 a month which amount shall be shared pro rata among the Allowed Class 9 Claimants for a period of 60 months. The payments shall be made on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid as called for by this Plan.

The Class 9 Claims are Impaired and the holder of a Class 9 Claims are entitled to vote to accept or reject the Plan.

**Class 10 Claims**. The Class 10 Claims will be paid once Allowed as follows: Over five (5) years from the Petition Date with interest on such amounts at the rate of 4.25% per annum until paid in full. These claims will be paid in equal monthly payments over 60 months, beginning on the 15th day of the first month after the Effective Date. Nothing in this Plan shall prevent the Class 10 Claimant from setting off amounts that may be due and owing to a Class 10 Claimant. Any provision in this Plan that would be construed as preventing a set-off is void and of no effect as to a Class 10 Claimant.

The Class10 Claims are impaired and the holders of the Class 10 Claims are entitled to vote to accept or reject the Plan although their votes do not count towards confirmation.

**Class 11 - Equity Interests**. On the Confirmation Date, all Equity Interests shall be treated as follows:

On the Effective Date, all Existing Membership Interests in the Debtor shall be cancelled. The new membership interests in the Reorganized Debtor shall be issued 100% to Jag Dhillon who is contributing a minimum $350,000.00 to the Reorganized Debtor to be used to fund the Plan. Such monies will be specifically used to make repairs at the hotel and to cover debt service while such repairs are being made. These monies will allow the hotel to get up and running in approximately 60-90 days from the Confirmation Date.

The Debtor believes that the Plan will not violate the absolute priority rule and will be consensual as to the unsecured creditors. In the event that the Class 9 unsecured creditors do not vote for the Plan, and the Bankruptcy Court requires an auction, then: (i) the Existing Membership Interests will be cancelled on the Effective Date, (ii) the new membership interests in the Reorganized Debtor shall be sold at an Auction sale as set forth herein, and (iii) the new equity interests in the Reorganized Debtor shall be issued to the successful bidder for the interest in the Debtor at the Auction, subject to the terms of this Plan. If the Plan is not confirmed by the Court at the Confirmation Hearing, then the sale of the equity interests shall not proceed and the sale shall be cancelled. The Reorganized Debtor shall remain the same corporate entity, without change in its structure.

The auction (the "Auction") under the Plan shall be held at the Confirmation Hearing. Any person or entity that desires to be considered for a possible bid must serve on counsel for the Debtor at least seven business days prior to the Confirmation Hearing the following bid and supporting information (collectively, a "Bid") (i) a copy of its proposed bid containing the cash purchase price for the membership interests in Reorganized Debtor, and all terms and conditions of the Bid, (ii) information identifying the proposed purchaser and all persons or entities who will own or control the proposed purchaser, (iii) information identifying the financial ability of the proposed purchaser and all persons or entities who will own or control the proposed purchaser to perform the Plan, and (iv) information identifying the relevant experience and management of the proposed purchaser and all persons or entities who will own or control the proposed purchaser to perform the Plan. The Debtor and any other party-in-interest may object to any proposed Bid for any reason.

If an Auction proceeds, the new equity membership interests in Reorganized Debtor shall be sold for the highest and best bid, consistent with the terms of the Plan and subject to objections by creditors and parties-in-interest. Jag Dhillon opening bid at an Auction sale is $350,000.00 for 100 percent of the new membership interests and his agreement to manage the hotel during the life of the Plan without a management fee. Any Bid by another person or entity must exceed $350,000 by at least $10,000 and must provide for management of the hotel without charge to the Debtor or its estate. The Debtor can propose to take the highest and best cash offer for the purchase of the new membership interests in the Reorganized Debtor at the time of the Hearing on Confirmation, so long as the cash purchase price exceeds $350,000. Even if a person or entity other than Jag Dhillon is the successful bidder for the new membership interests in

Reorganized Debtor under this Plan, the Plan and the rights and treatment of creditors and claims under the Plan are not impaired, changed or affected. Any winning bidder for the new membership interests in the Reorganized Debtor acquires such new membership interests subject to (and must expressly assume): (i) the Plan, (ii) the Reorganized Debtor's duties and obligations under the Plan, (iii) the allowance and treatment of claims, rights and liens under the Plan and the rights and remedies of creditors under the Plan and the obligations of the Reorganized Debtor and the purchaser at the Closing. The Debtor shall solicit such bids by noticing this Plan out to the creditors in this case.  The equity interest holders are impaired under the Plan.

Notwithstanding the foregoing, the License Agreement with HHFI, which allows Debtor to operate as a Holiday Inn Express® Hotel, is not being transferred as part of the Auction. The License Agreement and all rights thereto, including the Debtor's rights to use HHFI's marks and system, is a nonassignable asset that is not being sold or acquired through the Auction. If the equity interests are sold through the Auction, the License Agreement will be rejected and terminated on the Effective Date. In order to operate as a Holiday Inn Express® Hotel, the purchaser will need to apply to enter into a new license agreement with HHFI or one of its affiliates, which may or may not be approved in HHFI's sole and absolute discretion. Prospective bidders may obtain a license application by contacting Kevin Winkowski, Manager, Capital Investments & Transactions, InterContinental Hotels Group (770) 604-5158, kevin.winkowski@ihg.com.  Prospective Bidders are encouraged to contact Mr. Winkowski for the application and to submit a complete application package as early as possible.  Neither the Debtor nor HHFI guarantees a response to an application within any certain time period.

The Equity Interest holders are Impaired under the Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF PLAN

6.01 <u>Implementation of Plan; Vesting</u> This Plan will be implemented, pursuant to Section 1123(a)(5) of the Code, by the commencement of payments as called for in the Plan.

Upon the Effective Date, all property of DG LLC and its Estate shall vest in DG LLC, subject to the Allowed Secured Claims in this Plan.

The funds necessary for the satisfaction of the creditors' claims shall be generated from DG LLC'S income and the auction proceeds.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01 <u>Rejection of Executory Contracts and Unexpired Leases</u>**. DG LLC shall assume, pursuant to Bankruptcy Code Section 1123(b)(2), by separate Motions and order unexpired leases of non-residential real property and executory contracts prior to the Confirmation Date or as part of Conformation of a Plan in this case, except that the executory contract between Debtor and HHFI shall be assumed, effective as of the Effective Date, only in the event that the new equity interests are (i) issued to Jag Dhillon; (ii) subject to cure of all monetary defaults on

Case 12-40163    Doc 103    Filed 04/26/12    Entered 04/26/12 21:05:14    Desc Main
Document      Page 15 of 20

the License Agreement including (a) payment of all past due pre-petition franchise fees in the amount of $11,630.12 plus payment of post-petition franchise fees of $10,758.82, plus (b) payment of attorney's fees and costs incurred by HHFI in the amount of $10,500 (collectively, the "Cure Payment"), for a total Cure Payment of $32,888.94, to be paid in six equal monthly installments beginning on the Effective Date and on the first day of each month thereafter; (iii) cure of any non-monetary defaults on the License Agreement on or before the Effective Date; (iv) payment of all post-petition franchise fees in the amount of $2,776.53 monthly due for April 15, 2012 through September 15, 2012 in the ordinary course; (iv) payment of any realignment fee, and the execution of certain documents (the "Realignment Documents") including personal guarantees before the effective date, acceptable to HHFI in its sole and absolute discretion. All Cure Payments shall be sent to InterContinental Hotels Group, Attn: Nimesh Patel, Three Ravinia Drive, Suite 100, Atlanta, Georgia 30346-2121.
.

**7.02 Reservation of Rights**. DG LLC shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code).

**7.03 Bar Date for Claims Based on Rejection**. If the rejection of an executory contract or an unexpired lease by DG LLC results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against DG LLC or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon DG LLC, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however,* that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission by DG LLC that such rejection gives rise to or results in a Claim or shall be deemed a waiver by DG LLC of any objections to such Claim if asserted.

## ARTICLE VIII
## ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS

**8.01** DG LLC'S Causes of Action. Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of DG LLC or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by DG LLC for the benefit of the Creditors subsequent to the Effective Date. Nothing in this Plan shall act as a bar as it relates to any claims of DG LLC against third parties, except as expressly released pursuant to the Plan. Nothing in this Plan or the confirmation of the Plan shall estop the Debtor from asserting claims against third parties.

Objections to Claims. Any party authorized by the Bankruptcy Code may object to the allowance of Pre-petition Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; *provided, however,* that DG LLC may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. If a Claim is disputed in whole or in part because DG LLC asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of *such offset or* recoupment, less the amount of its Allowed Claim. In addition, any party authorized by the Bankruptcy Code, at anytime, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

## ARTICLE IX
## EFFECT OF CONFIRMATION

**9.01 Discharge and Release of** DG LLC. Except as provided in the Plan, pursuant to Bankruptcy Code Section 1141(d), confirmation of this Plan does discharge DG LLC. **For the avoidance of doubt, no provision in the Plan, the Disclosure Statement, or the Confirmation Order or Section 1141 of the Bankruptcy Code shall be construed as modifying or amending any personal guarantee that guarantees the Debtor's obligations under the License Agreement.**

**9.02 Legal Binding Effect**. The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind DG LLC and all Creditors, whether or not they accept this Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

**9.03 Discharge** shall result in the inability to commence or continue any judicial, administrative, or other action or proceeding on account of any Pre-Petition Date Claims against DG LLC.

Except as provided in the Plan, from and after the Confirmation Date, all holders of Claims against DG LLC are restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against DG LLC, or its property; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or DG LLC on account of such

Claims; c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or DG LLC on account of such Claims; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the DG LLC on account of such Claims; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan on account of such Claims; *provided, however,* that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce its rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan. Such restraint shall be consistent with the discharge granted to DG LLCin connection with confirming its Plan as called for by the Code.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

**10.01 Request for Relief Under Bankruptcy Code Section 1129**. In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), DG LLC reserves the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

**10.02 Revocation**. DG LLC reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

**10.03 Effect of Withdrawal or Revocation**. If DG LLC revokes or withdraws this Plan prior to the Confirmation Date, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against DG LLC or any other person or to prejudice in any manner the rights of DG LLC or any person in any further proceedings involving DG LLC.

**10.04 Due Authorization by Creditors**. Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against DG LLC the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**10.05 Entire Agreement**. This Plan, as described herein, the Confirmation Order and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

**10.06 Section 1146 Exemption**. Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**10.07 Provisions Governing Distributions**.  All payments and distributions under the Plan shall be made by DG LLC as indicated. Any payments or distributions to be made by DG LLC pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court. Any payment or distribution by

DG LLC pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by DG LLC pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed). All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall remain the property of DG LLC and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

Checks issued by DG LLC in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made directly to DG LLC by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to DG LLC.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**10.08 Governing Law**. Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**10.09 Default**. If DG LLC fails to satisfy any of the obligations under this Plan and such default is not cured within 30 business days of the date of transmission of notice of the default to DG LLC, then the defaulted party may pursue all of its remedies outside of the Bankruptcy Court, including, but not limited to, foreclosure on its lien(s) on property. For purposes of this provision, notice shall be provided to DG LLC, c/o Joyce Lindauer, Esq. at (972) 503-4034.

## ARTICLE XI
## MODIFICATION OF THE PLAN

**11.01** DG LLC may propose amendments or modifications of the Plan at any time prior to Confirmation, upon notice to all parties-in-interest. After Confirmation, DG LLC may, with approval of the Court, and so long as it does not materially or adversely affect the interest of creditors, to remedy any defect or omission or reconcile any inconsistencies in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of this Plan.

# ARTICLE XII
# RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

**12.01 Allowance of Claims**. To hear and determine the allowability of all Claims upon objections to such Claims.

**12.02 Executory Contracts and Unexpired Leases Proceedings**. To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of DG LLC pursuant to Sections 365 and 1123 of the Code and Article VII of the Plan.

**12.03 Plan Interpretation**. To resolve controversies and disputes regarding the interpretation of the Plan.

**12.04 Plan Implementation**. To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

**12.05 Plan Modification**. To modify the Plan pursuant to § 1127 of the Code and applicable Bankruptcy Rules, except that no modification shall be made to the Plan that would impair, diminish or affect in any way the rights of participants of any Classes of the Plan without the consent of such Class.

**12.06 Adjudication of Controversies**. To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against DG LLC.

**12.07 Injunctive Relief**. To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or in the Confirmation Order.

**12.08 Interpleader Action**. To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

**12.09 Correct Minor Defects.** To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

**12.10 Authorization of Fees and Expenses**. To review and authorize payment of professional fees incurred prior to the Effective Date.

**12.11 Post-Confirmation Orders Regarding Confirmation**. To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

**12.12 Final Decree**. To enter a final decree closing the Case pursuant to Bankruptcy

Rule 3022.

                        Submitted By:

                        By: /s/ Joyce Lindauer
                        Joyce Lindauer
                        Attorney at Law
                        Texas Bar No. 21555700
                        Arthur I. Ungerman
                        Attorney at Law
                        8140 Walnut Hill Lane
                        Suite 301
                        Dallas, TX 75231
                        Tel: (972) 503-4033
                        Fax: (972) 503-4034
                        COUNSEL FOR Dhillon Group, LLC

                        /s/ Jag Dhillon
                        for Dhillon Group, LLC