1

```
 1            IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE EASTERN DISTRICT OF TEXAS
 2                    SHERMAN DIVISION

 3

 4  IN RE:                        )  BK. NO:  12-40163-BTR-11

 5                                )

 6  DHILLON GROUP, INC.           )

 7       D E B T O R              )

 8

 9

10            *   *   *   *   *   *   *   *   *   *   *

11

12               TRANSCRIPT OF PROCEEDINGS

13

14            *   *   *   *   *   *   *   *   *   *   *

15

16

17

18

19

20       BE IT REMEMBERED, that on the 21st day of February,

21  2012, before the HONORABLE BRENDA T. RHOADES, United States

22  Bankruptcy Judge at Plano, Texas, the above styled and

23  numbered cause came on for hearing, and the following

24  constitutes the transcript of such proceedings as hereinafter

25  set forth:
```

                                                                        2

1                    P R O C E E D I N G S

2                 COURTROOM DEPUTY:  The next matter on the

3    docket is on page 4, number 11.  Dhillon Group, LLC.  Case

4    12-40163.  Seven first day motions filed by the debtor.

5                 MS. LINDAUER:  Your Honor, there's a couple of

6    other attorneys that are involved in this case that are out

7    in the hall.  But I can go ahead and make announcements on

8    these matters, if that's appropriate.

9                 THE COURT:  Do you want to make your

10   appearance for the record?

11                MS. LINDAUER:  Yes, Your Honor.  Joyce

12   Lindauer and Arthur Ungerman for Dhillon Group, LLC.

13        Our application to be employed is pending in this case.

14   This is a case that was transferred from Las Vegas, Nevada to

15   this Court.  There were a number of motions that were filed

16   in the Nevada court and then they got set over to this court.

17   I think they were previously set about two weeks ago and then

18   they were reset on the docket for today.

19        And, Your Honor, what I'd like to do is just run

20   through a lot of these matters that may have been appropriate

21   when the case was in Nevada and are not as appropriate here

22   in this court.  So what I'd like to do is go ahead and

23   announce that we're going to withdraw item number C, which is

24   the application to employ Kung & Brown.  That was counsel for

25   the debtor in Nevada.  We're withdrawing E, which is the

1  application to employ Patrick Glenn as appraiser.  We're
2  withdrawing F, the application to employ Andy Futsa as
3  appraiser; G, the application to employ Lewis Estedas as
4  adjustor.  And then with regard to item D, and this is where
5  I probably need to grab -- Mike, can you go get Arthur and
6  Laura out of the conference room for me?
7       Any way, item D, Your Honor, the application to employ
8  Beckham Group.  Your Honor, we do have an agreement with the
9  lender's counsel to go ahead and have that application to
10 employ Beckham Group as special counsel in this case
11 approved.  The only objection we received was from the Bank.
12 Beckham Group is counsel that's been handling an insurance
13 claim related to this property.  The hotel is currently not
14 operating at this time.  There was flood damage due to some
15 pipes.  And so there's insurance claims pending.  The Beckham
16 Group is going to be special counsel to handle the insurance
17 claims matters, Your Honor.  And I do have Jose Portela with
18 the Beckham Group present.  I also have Ms. Worsham present,
19 who represents the Bank in this matter.  And we're in
20 agreement that item D, the application to approve Beckham
21 Group should be approved.  They would be special counsel.
22 They would be paid based on an application, just like
23 debtor's counsel, and subject to the Court approving their
24 fees.  They have not been paid a retainer and they would not
25 receive a retainer in connection with their employment, if we

4

1  need to come back for that matter.
2        And then the last matter, Your Honor, is matters A and
3  B.  And those are, I think, cash collateral order matters.
4  And we're simply going to ask the Court to pass those.  Since
5  the hotel is not currently operating, we don't actually have
6  cash collateral at this time.  And so until such time as the
7  hotel would be operating, there wouldn't be a need for use of
8  cash collateral.  So we'd like to go ahead and pass matters A
9  and B at this time.
10        So where that leaves us, Your Honor, is matter C, E, F,
11 and G would be withdrawn by the debtor.  Matter D,
12 application of Beckham Group, we would ask the Court to go
13 ahead and approve that.  And matters A and B would be passed
14 to a later date, probably 60 days out, at such time as the
15 hotel is actually operating and we have cash collateral.
16             MS. WORSHAM:  Laura Worsham for United Central
17 Bank, Your Honor.
18        We are in agreement with what Ms. Lindauer said on
19 passing the cash collateral issues until operation.  And we
20 are okay with Mr. Beckham's employment under the scenario set
21 forth with Court approval of any application.
22             THE COURT:  So this is not a 328 application?
23             MS. LINDAUER:  This is an application to
24 employ special counsel.  I don't have a bankruptcy --
25             THE COURT:  Okay.  So we're not pre-approving

1  anything?

2            MS. LINDAUER:  No.

3            MS. WORSHAM:  No, Your Honor.

4            THE COURT:  It's just they're going to file a

5  fee application?

6            MS. LINDAUER:  Correct, Your Honor.  And his

7  hourly rate pre-petition was much higher than what it is

8  post-petition.  He's agreed to 350 an hour post-petition

9  hourly rate, which is fine.  I know the Bank had some

10 concerns about the hourly rates.  So we've resolved that.

11           THE COURT:  Okay.  That's fine with you all.

12 But my question is, is this an administratively insolvent

13 entity, or what's going on here?

14           MS. LINDAUER:  Your Honor, I don't think so.

15 The hotel is probably worth less than what's owed on it.  But

16 we have about 350,000 in insurance money that's being

17 supposedly turned over to the Registry of the Court.  The

18 Bank has already collected about 225,000.  And there are

19 claims still to be asserted against the insurance company for

20 another approximately 360,000.  And that's what the Beckham

21 Group is going to assist with.

22      Mr. Dhillon, who is present in court, has agreed that

23 to the extent that the debtor does not have the money to pay

24 administrative expenses, that he would be responsible for

25 those.  So he's agreed to pick up our fees.  I would assume

1  he would pick up Mr. Beckham's fees, if the case doesn't have
2  the money in it to actually pay the administrative expenses.
3  So, obviously, that would be part of a plan, which is what
4  we've been talking to Ms. Worsham about.
5              THE COURT:  Well, that may be part of a plan.
6  The question is, how do we get to the plan?  Is there some
7  agreement now, or are you saying there may be an agreement in
8  the future?
9              MS. LINDAUER:  There's no agreement with the
10 Bank right now.
11             THE COURT:  No.  I'm talking about an
12 agreement with Mr. Dhillon about the funding of
13 administrative -- you're asking me to approve the retention
14 of counsel.  And I understand there's insurance proceeds to
15 be had if they win.
16             MS. LINDAUER:  Right.
17             THE COURT:  My question is, what are we doing
18 if they lose?
19             MS. LINDAUER:  I think if they lose then --
20 and we don't come up with a plan, then I think that to the
21 extent Mr. Dhillon is willing to pick up our fees, he'll do
22 so.  If he doesn't then all of us are in the same boat,
23 because Mr. Ungerman and I have the same issue on our
24 applications to be employed, also.
25             THE COURT:  Okay.  So the counsel, Beckham

Case 12-40163   Doc 90   Filed 03/19/12   Entered 03/19/12 14:09:16   Desc Main
Document      Page 7 of 11

7

1  Group, also understands that?
2           MS. LINDAUER:  I believe so.
3       Don't you understand that?
4           MR. PORTELA:  Yes, Your Honor.  Just for
5  clarification purposes.
6           THE COURT:  Do you want to make your
7  appearance for the record, sir?
8           MR. PORTELA:  I'm sorry, Your Honor.  I
9  apologize.
10      My name is Jose Portela.  I'm here on behalf of the
11 Beckham Group.
12          THE COURT:  Okay.
13          MR. PORTELA:  Your Honor, just for
14 clarification of the record.  There's funds that the Bank is
15 currently holding, approximately $215,000, that are insurance
16 proceeds.  That's not future.  That's not contingent.  They
17 are sitting there.  There's another 345 that the insurance
18 company is interpleading into this Court Registry.  That's
19 not -- well, that is in the future.  It's not uncertain.  It
20 is certain that they're paying that money.
21          THE COURT:  Well, if they're interpleading,
22 there's some issues involved, right?
23          MR. PORTELA:  They would say, yes.  We would
24 say, no.
25          THE COURT:  Well, since they say, yes, and

1  they're the payor --

2            MR. PORTELA:  I'm sorry, Your Honor.  Their

3  concern on the interpleader is they were worried that there

4  might be a dispute between the entity and the Bank as to who

5  owned the money.

6            THE COURT:  Okay.

7            MR. PORTELA:  And --

8            THE COURT:  Is there, Ms. Worsham?

9            MS. WORSHAM:  Your Honor, we believe the Bank

10 owns that money under its collateral documents and has the

11 right not to have the hotel repaired.  And we've been willing

12 to listen to what the debtor has to say.  But our claim is

13 the money is our's.

14           MR. PORTELA:  The money is coming in.  And,

15 yes, we've agreed to, just like other administrative counsel,

16 we're going to be hired as special counsel, for a limited

17 matter, to continue to pursue this insurance claim because

18 we've been very successful to date.  We've gotten over

19 $750,000 paid on this insurance claim so far.  And we will

20 continue to do so and continue to benefit the estate.

21           THE COURT:  Okay.  But you understand that if

22 you don't win, while your fee arrangement might not be a

23 contingency fee arrangement, if you don't win, there may not

24 be any money there to pay --

25           MR. PORTELA:  We understand that if the estate

1  doesn't have money to pay administrative claims, we don't get
2  paid.
3              THE COURT:  Okay.  All right.
4      So I'm understanding from all of the parties that C, E,
5  F, and G items are being withdrawn, correct?
6              MS. LINDAUER:  Correct, Your Honor.
7              THE COURT:  And the Court so notes.  With
8  respect to the retention of Beckham Group, there being no
9  objections, the Court will authorize the retention of the
10 Beckham Group.  With respect to the cash collateral and the
11 first day motions, we will continue the matter for hearing
12 until April 30th at 10:30 a.m.  If for some reason something
13 happens and you need an earlier date, you can file your
14 appropriate motion and we'll get it moved up for you.  With
15 respect to the employment of Beckham Group, you'll need to
16 upload a new order, Ms. Lindauer.
17     Okay.  Is there anything else we need to handle today
18 before I excuse the parties?
19             MS. LINDAUER:  No, Your Honor.  But we will go
20 ahead and file on the docket withdrawals of those other
21 matters so that they are reflected on the docket as
22 withdrawn, also.
23             THE COURT:  There will be a minute entry
24 entered based on the Court's ruling today.
25             MS. LINDAUER:  And then our application to be

NATIONAL COURT REPORTERS (214) 651-8393

```
 1  employed is pending.  But I don't think it -- your normal
 2  rule is it's not set, unless there's an objection.
 3                  THE COURT:  Exactly.
 4                  MS. LINDAUER:  So that will come up in the
 5  ordinary course.
 6                  THE COURT:  Exactly.
 7                  MS. LINDAUER:  Okay, good.
 8                  THE COURT:  Thank you.
 9                  MS. LINDAUER:  Thank you, Your Honor.
10                  THE COURT:  Parties are excused.
11                       (End of Proceedings.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1       C E R T I F I C A T E

2       I, CINDY SUMNER, do hereby certify that the

3  foregoing constitutes a full, true and complete transcription

4  of the proceedings as heretofore set forth in the

5  above-captioned and numbered cause in typewriting before me.

6

7

8

9

10

11

12

13

14                                /s/Cindy Sumner
                                  _____
15                                CINDY SUMNER, CSR #5832
                                  Expires 12-31-13
16                                National Court Reporters
                                  16 Gettysburg Lane
17                                Richardson, Texas 75080
                                  214 651-8393
18                                Firm #417

19

20

21

22

23

24

25